**Rose LERRA, Plaintiff,**

**v.**

**MONSANTO CO., Defendant.**

**Civ. A. No. 80–95–G.**

United States District Court,
D. Massachusetts.

Sept. 1, 1981.

Thornton E. Lallier, Rowley, Mass., for plaintiff.

Richard F. McCarthy, Richard E. Bennett, Willcox, Pirozzolo & McCarthy, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GARRITY, District Judge.

The plaintiff, Rose Lerra, is the widow of a formerly retired Monsanto employee, Joseph Lerra, Sr. The basic allegation of her complaint is that through the fault of Monsanto, her husband had unwittingly selected a "single life annuity" method of payment of his accrued retirement benefits, thereby depriving her of payments she would have received after her husband's death if he had chosen a "50% joint and survivor annuity" (J&S) method. The plaintiff, in her amended complaint, alleges that she is entitled either to a reformation of her husband's election agreement with Monsanto such that she will collect payments as though her husband had selected a 50% J&S annuity option, or to damages equal to the sum of the payments she would receive if her husband had selected the 50% J&S annuity. The defendant moved for summary judgment on all four counts of the amended complaint on March 25, 1981. The plaintiff then moved to strike portions of the affidavits submitted by the defendant in support of its motion on April 21, 1981. We heard oral argument on both of these motions on August 24, 1981, and ruled on the plaintiff's motion to strike at the hearing. After considering the briefs and oral arguments of the parties, we grant the defendant's motion for summary judgment on all counts.

The material facts, as to which we find there is no dispute, are as follows. Joseph

Lerra, Sr., the plaintiff's husband, began his employment with the defendant, Monsanto, at its Everett, Massachusetts plant sometime in September, 1945. There is no evidence of the various services Joseph Lerra, Sr. performed for Monsanto throughout his employment, but at the time of his retirement he worked as a janitor at the Everett plant. Sometime in January or February of 1976, Joseph Lerra, Sr. approached Elizabeth Hawk-Muston, who was the personnel representative at the plant, to discuss his possible early retirement because of his heart condition. On July 19, 1976, Mr. Lerra again met with Hawk-Muston, while his early retirement application was still pending company approval, to review his retirement benefit options. Mr. Lerra signed an election form that day choosing a "single life annuity" option. Ms. Hawk-Muston then sent Mr. Lerra a letter dated July 22, 1976, in which she asked Mr. Lerra to confirm his selection of a single life annuity by returning to her a form with his signature. On July 26, 1976, Mr. Lerra signed and returned the confirmation of his selection.

Mr. Lerra's retirement was approved, and he left Monsanto's Everett plant in October, 1976. On various occasions in August, 1977, Joseph Lerra, Sr. told his two sons that his wife, the plaintiff, was "taken care of for life," and that "Ma will get $175 per month for life." Mr. Lerra died on December 14, 1977, at which time the plaintiff, Rose Lerra, discovered that her husband had selected a single life annuity, and not a joint and survivor annuity as she had believed. At the time Joseph Lerra was making his retirement selections, in July of 1976, Rose Lerra states in her affidavit that "Joe wanted to talk about it. I didn't want to talk about death, so I avoided it." Mrs. Lerra brought suit against Monsanto on December 11, 1979.

█ Count I alleges that Monsanto's personnel representative, Ms. Hawk-Muston, misrepresented the company's pension benefit program to Mr. Lerra, thereby causing him to elect a "single life annuity" which left the plaintiff, his wife, without pension payments after his death. Under Massachusetts law,

[t]o recover in an action of deceit the plaintiff must prove as to the misrepresentation: (1) that it was as to a matter of fact, which may include a belief or an intention, made by the defendant or his agent; (2) that it was made with the intention to induce another person to act upon it; (3) that it was made with knowledge of its untruth, or was made of a fact susceptible of actual knowledge with recklessness as to its truth or falsehood, or was the utterance of a half truth, which in effect is a lie, or was the failure to disclose known facts when there was a duty, original or supervening, to disclose; (4) that it was intended that it should be acted upon, as it was, and (5) that damage resulted therefrom.

Simpson & Alperin, Summary of Basic Law, 14A, Massachusetts Practice & 1791 (1974).

We find that the defendant's motion for summary judgment must be granted as to Count I, because plaintiff's complaint and supporting affidavits fail to show a prima facie case of deceit.

First, Rose Lerra has brought this action in her individual capacity *only*. In this circumstance, the complaint must show some misrepresentation, made either directly or indirectly to Mrs. Lerra. Two paragraphs of Count I relate to Monsanto's alleged misrepresentation:

¶ 12. That Elizabeth Muston, as an authorized employee of Monsanto, did advise, knew or should have known, the pension-insurance programs and so misrepresented to Joseph Lerra that he should take a single life annuity and forego the lifetime survivor's benefit under his pension insurance program.

. . . .

¶ 15. That relying upon Elizabeth Muston's advice, Joseph Lerra signed a single annuity option for a single lifetime benefit and still believed that he still had a "5 year free ride" with lifetime benefits to his widow and so stated it publicly up to the time of his death.

While it is true that one may be charged with fraud or deceit even though he is not a

party to the transaction into which a *complainant* is induced to enter, *Nash v. Minnesota Title Ins. & Trust Co.*, 1895, 163 Mass. 574, 40 N.E. 1039, the complaint does not allege that Mrs. Lerra was induced to do or refrain from doing anything by virtue of any representation made to her husband. In fact, Mrs. Lerra testifies that she refused even to discuss the selection of retirement options with her husband.

The complaint and supporting affidavits further show no indication of fraudulent intent on the part of Monsanto or its agent, Ms. Hawk-Muston. The representations that Mrs. Lerra complains of must appear to have been made for the purpose of influencing *her*, and the intent that she act or refrain from acting upon those representations. *Hunnewell v. Duxbury*, 1891, 154 Mass. 286, 28 N.E. 267; *Fogg v. Pew*, 10 Gray [Mass.] 409. There is no allegation, nor evidence that any representation was made either directly or indirectly to Mrs. Lerra, with or without the necessary fraudulent intent.

There is no evidence or allegation of the necessary scienter on the part of the defendant to make any misrepresentation remediable. At best, paragraph 15 of Count I could be construed to allege a concealment of the fact that the election of a single life annuity deprived Mr. Lerra's spouse, the plaintiff, of pension payments upon her husband's death. Since the very definition of a single life annuity excludes the possibility of there being any payments to a survivor of the annuitant, this allegation is tantamount to alleging that the defendant concealed the definition of a single life annuity. Assuming that the complaint could be construed to allege that such a concealment was an indirect misrepresentation to *Mrs. Lerra*, and that Monsanto intended her to rely on this concealment, there must also be some showing that the concealment was accompanied by knowledge of the true definition and with the *intent to deceive*. *French v. Vining*, 1869, 102 Mass. 132; *Tryon v. Whitmarsh*, 1840, 1 Met. [Mass.] 1. There is no evidence or allegation that Ms. Hawk-Muston concealed the true nature of a single life annuity with the intent to

deceive *anybody*. In fact, paragraph 8 of the complaint alleges:

> That Monsanto's employee, Elizabeth Muston, who worked in the personnel department during 1976 in Everett, Massachusetts, did not have extensive knowledge at the time of the pension-insurance and disability programs or their procedures.

Thus, proof of this allegation would exonerate the defendant from liability under Count I.

■ Second, even if Mrs. Lerra were suing in the capacity of administratrix of Joseph Lerra's estate, there could be no recovery for misrepresentation here. The complaint still fails to allege the necessary elements of intent and scienter, even though Joseph Lerra's reliance could be proven.

Count II, based on contract principles, alleges that Ms. Hawk-Muston and Joseph Lerra both misunderstood the single life annuity option, and therefore made a "mutual mistake of fact" about the subject of Mr. Lerra's election. The mistake concerns a change in the 1976 retirement plan made to conform with the requirements of ERISA. In particular, 29 U.S.C. § 1055(e) requires that a married employee be given the option to elect *out* of a 50% joint and survivor annuity if a plan provides for payment by annuity. Monsanto's 1976 plan allows such an election in sections 9.1(a) and (b), 9.2. Section 9.1(a) states that "A participant who has a spouse on the date as of which such payments commence and *who has not made an election* in accordance with subparagraph (b) below or subsection 9.2 shall receive payments in the form of a joint and survivor annuity . . . ." (emphasis added). The 1971 Plan, which the 1976 Plan supersedes, had provided in Article II, section 5:

> If an Employe who has ten or more years of Credited Service or a Retired Employe who retired early pursuant to Section 2 . . ., or a Disabled Retired Employe who retired pursuant to Section 3 . . . dies after attaining age 50 and prior to the earliest of:
>
> (a) his Normal Retirement Date,

(b) the effective date elected by him under any one of the Optional Forms of Pension Payment or

(c) 1 year following his retirement pursuant to Section 2 . . .

his surviving spouse, if any, shall be entitled to receive a pension for the surviving spouse's life equal to 50% of the amount of the Regular Benefits and Supplemental Benefits, if any, he would have been entitled to receive . . . prior to the earlier of his death, retirement, or the date he was deemed to be totally and permanently disabled. . . .

Thus, under either the 1971 or the 1976 Plans, if the employee makes *no* election, his spouse automatically receives payments after her husband-employee's death under a 50% joint and survivor annuity. There is *no* difference between the two plans with respect to the so-called "automatic free ride", because the married employee could elect *out* of the 50% joint and survivor annuity under *both* plans.

 Count II, however, seems to allege that both Ms. Hawk-Muston and Joseph Lerra believed that Mr. Lerra could elect a single life annuity without depriving the plaintiff of a survivor's annuity. Mutual mistake may render a contract void. Since Mrs. Lerra is suing in her individual capacity, and not on behalf of Joseph Lerra, she is not privy to the contract between Joseph Lerra and Monsanto. As a stranger to the contract, Mrs. Lerra has no right to sue based on the contract. *Mellen v. Whipple*, 1 Gray [Mass.] 317. Further, the effect of proving mutual mistake is *recission* of the contract, not *reformation* as requested by the plaintiff. *Aldrich v. Travelers Ins. Co.*, 1944, 317 Mass. 86, 56 N.E.2d 888; *Neel v. Lang*, 1920, 236 Mass. 61, 127 N.E. 512. Lastly, as we have noted, there is no material difference between the 1971 and 1976 Plans as to which any material mistake could be made as alleged by the plaintiff. Accordingly, the defendant's motion for summary judgment as to Count II is granted.

█ Count III alleged that Ms. Hawk-Muston befriended Joseph Lerra and assumed a fiduciary relationship toward him with respect to advice about his pension options. This count simply states that there was a "close, confidential, fiduciary relationship" between Ms. Hawk-Muston and Mr. Lerra, and that Ms. Hawk-Muston breached her fiduciary duties by "recommending changing his program." Complaint, ¶ 20.[1] Presumably plaintiff seeks, but does not request, the imposition of a constructive trust on funds being "withheld" from Mrs. Lerra by Monsanto under a 50% joint and survivor's annuity she alleges she would have received absent the breach of fiduciary duty. The first difficulty with this count is that Ms. Hawk-Muston is alleged to be a fiduciary, who breached her fiduciary duties, but Ms. Hawk-Muston is not a *defendant* in this case. The second difficulty is that Joseph Lerra is alleged to have entrusted Ms. Hawk-Muston, and Joseph Lerra is not a *plaintiff* in this case. Count III therefore alleges a breach of a fiduciary relationship between two individuals who are not parties to this action. Count III should be dismissed for this reason alone.

Even if the complaint alleged a fiduciary relationship between Monsanto, assuming Ms. Hawk-Muston could assume fiduciary obligations on its behalf, and Mrs. Lerra, the plaintiff, no construction of the facts of this case could support a finding of a fiduciary relationship between Ms. Hawk-Muston and Joseph Lerra, Sr. Though a certain amount of trust is always involved in an employer-employee relationship, it does not amount to the imposition of fiduciary responsibilities on the employer by virtue of the contractual agreement or by virtue of friendly relations. *See Ball v. Harrison*, 1943, 314 Mass. 390, 395, 50 N.E.2d 31. Accordingly, we grant defendant's motion for summary judgment on Count III.

█ Count IV is labelled "Negligence", though it is essentially a restatement of the

---

1. This is the first paragraph of the complaint that alleges Ms. Hawk-Muston recommended *anything*. This count does not allege that Ms. Hawk-Muston is or was a fiduciary within the meaning of ERISA, 29 U.S.C. § 1104(a)(1).

previous counts, plus one paragraph alleging that Monsanto breached its statutorily prescribed disclosure requirements under ERISA. Complaint, ¶ 36. The gist of Count IV, however, is in paragraphs 37 and 38 of the complaint:

¶ 37. "The Plaintiff asserts that the Defendant had a duty, which it violated, in not warning Joseph Lerra of the dangers, or fully disclosing to him the difference between the 1971 pension and retirement plans from the 1975 contract pension, retirement plans, in order to knowingly understand and select his retirement and widow's allowance option."

¶ 38. "The Plaintiff asserts that Elizabeth Muston did negligently, carelessly and unskillfully give advice to Joseph Lerra in selecting his retirement and widow's option, and as a proximate result of said negligences, Joseph Lerra and the Plaintiff were greatly damaged."

The most glaring defect in this claim is on its face, in that there is no allegation that the defendant owed any duty of care to the plaintiff in this case—Mrs. Lerra. But even if Monsanto did owe *Mrs.* Lerra, as a foreseeable plaintiff, the duty to disclose to *Joseph* Lerra, Sr. the effect of his selection of a single life annuity option, we find there is no disputed issue of material fact relevant to Monsanto's duty of disclosure with respect to Joseph Lerra, Sr. Fed. R.Civ.P. 56(e); *see Perez v. United States*, 1 Cir., 1979, 594 F.2d 280, 290–91; *Soar v. National Football League Players' Assn.*, 1 Cir., 1977, 550 F.2d 1287, 1289 n. 4.

It is uncontroverted that the election form Joseph Lerra, Sr. signed on July 19, 1976, explains the single life annuity option as follows:

Your monthly payments under this method are larger than those under the 50% Joint and Survivor Annuity. However, pension payments stop when you die. The last payment due will be the one for the month in which your death occurs. If your spouse lives after your death, he or

she will not receive any pension payments.

Hawk Deposition, Exhibit # 1.

In Massachusetts, one who signs an agreement is presumed to have read and understood its contents. *Wood v. Massachusetts Mutual Accident Ass'n*, 1899, 174 Mass. 217, 221, 54 N.E. 541. The textual explanation of a single life annuity unmistakably discloses to Joseph Lerra that his spouse will not receive any pension payments after his death. The Hawk-Muston affidavit says that she orally reviewed each of the options on the election form with every retiring employee, and that though she does not specifically remember her discussion with Joseph Lerra on July 19, her habitual explanation of the single life annuity was that "the pension dies with you." Hawk-Muston Affidavit, ¶ 6; Hawk Deposition p. 24. Ms. Hawk-Muston then sent a letter to Joseph Lerra on July 22, 1976, asking him to confirm his selection of a single life annuity, which he signed. Mr. Lerra had also received numerous other plan descriptions detailing the provisions of all the pension plan options. Hawk Deposition, pp. 29, 50, 53, 79; Defendant's Answer to Interrogatory 4(v); Affidavit of Joseph Lerra, Jr., ¶ 15 and exhibits. Furthermore, we have found that there is no material difference between the provisions of the 1971 and 1976 Plans with respect to the effect of an election of a single life annuity, that, if such a difference existed, Monsanto would have had a duty to disclose to Joseph Lerra. The existence of these facts alone satisfies whatever duty of care Monsanto owed both Joseph Lerra and his spouse, the plaintiff. The individual attention Ms. Hawk-Muston gave to Joseph Lerra in fact went beyond the duties of disclosure imposed by ERISA. *See Allen v. The Atlantic Richfield Retirement Plan*, E.D.Pa., 1979, 480 F.Supp. 848, aff'd mem. 3 Cir., 1980, 633 F.2d 209; *Vaughan v. Metal Lathers Local 46 Pension Fund*, S.D.N.Y., 1979, 474 F.Supp. 613, 620. The admissible evidence adduced by the plaintiff does not controvert any of these facts,[2] and therefore we grant the defend-

---

**2.** Aside from its doubtful admissibility, we find plaintiff's evidence that Joseph Lerra, Sr. had told relatives that the plaintiff was "taken care

of for life," that the plaintiff has always been in good health, and that Ms. Hawk-Muston must have "confused [Joseph Lerra's] retirement

ant's motion for summary judgment with respect to plaintiff's negligence claim.

Count IV also asserts that Monsanto violated ERISA disclosure requirements, 29 U.S.C. § 1021(a), 1022(a)(2), 1022(b). This allegation is raised in paragraph 36 of the complaint:

The Plaintiff asserts that the Defendant violated Chapter 18 of 28 U.S.C.A. [sic], Employee Retirement Income Security Program [sic] (ERISA), Section 1021(a), Section 1022(2) and Section 1022(2)(b), in not providing Joseph Lerra with benefit information, particularly as it shows changes from the previous Union negotiated plan at the time he made his option selection on or about July 1976.

 The first problem encountered by this allegation is jurisdictional. Civil enforcement of ERISA provisions is governed by 29 U.S.C. § 1132, which states:

Persons empowered to bring civil action (a) A civil action may be brought . . . .

(3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

The only way Mrs. Lerra could bring suit under ERISA is if she is a "beneficiary" under the plan. However, the definitional section of ERISA, 29 U.S.C. § 1002(8) defines beneficiary as

a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

The problem posed in this case is that Mrs. Lerra is *not* a beneficiary under the plan. Further, the complaint makes no *allegation* that Mrs. Lerra fits the definition of beneficiary, so this court has no *jurisdiction* to hear the claim. It has been held that "ERISA does not supply a right of action against a retirement plan to a non-employee spouse and, therefore, . . . this Court does not have

jurisdiction . . . ." *Francis v. United Technologies Corp.*, 1978, N.D.Cal., 458 F.Supp. 84, 87.

Second, even if it were assumed that Mrs. Lerra could be considered a "designated beneficiary" under the plan because of the life insurance proceeds she received, there is no merit to the allegation that Monsanto failed to comply with ERISA disclosure requirements under 29 U.S.C. §§ 1021(a), 1022(2), 1022(b).

These provisions require that a summary plan description be prepared and mailed to all participants. The affidavit of Joseph Lerra, Jr. confirms that these requirements were complied with by Monsanto. Joseph Lerra, Jr. states that he found all the material required by ERISA in his father's records. *See* Affidavit of Joseph Lerra, Jr., ¶ 15, Exhibits A, B, C & D. Therefore, we grant defendant's motion for summary judgment on this claim as well, and Counts I, II, III, and IV of plaintiff's complaint are accordingly dismissed.

---

facts with John Connelly, "is irrelevant to whether the uncontroverted facts established

sufficiently satisfy any duty of care Monsanto owed Mrs. Lerra.