**Albert Louis KEYS, individually, and as Executor of the Estate of Albert Keys, Plaintiff,**

v.

**EASTMAN KODAK COMPANY, Kodak Retirement Income Plan, and Kodak Retirement Income Plan Committee, Defendants.**

**No. Civ. 89–1219L.**

United States District Court, W.D. New York.

June 7, 1990.

Michael J. Kopcsak, Dunnington, Bartholow & Miller, New York City, Irwin Gilbert, Pittsford, N.Y., for plaintiff.

Eugene D. Ulterino, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for defendants.

**MEMORANDUM DECISION AND ORDER**

LARIMER, District Judge.

This action, before me on the parties' cross motions for summary judgment, is

brought by the son of a former Kodak employee alleging violation of a section of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1022. This section requires dissemination of a summary description of an employee benefit plan, to apprise participants and beneficiaries of their rights and obligations under the plan. The complaint also states a state law claim for estoppel. For the reasons stated below, summary judgment is hereby granted in favor of the defendants.

## BACKGROUND

At the time of his death, plaintiff's father, Albert Keys, had been an employee of the Eastman Kodak Company for 42 years, and was a participant in the Kodak Retirement Income Plan (KRIP). The Kodak Retirement Income Plan Committee (KRIP-CO) administers the plan.

In February of 1988, Albert Keys suffered a massive stroke that left him brain damaged, unable to work or conduct his affairs, and able only to speak a few words at a time with great effort. Following an unsuccessful attempt to obtain information over the telephone regarding his father's health, life, savings and pension benefits, plaintiff visited the Kodak Employee Benefits Office on February 29, 1988 in order to obtain this information.

Although plaintiff purported to act on his father's behalf, Kodak refused to disclose specific information regarding Keys' benefits because plaintiff had not been appointed his father's conservator, nor did he possess a written power of attorney. In fact, prior to his visit to Kodak, plaintiff had commenced proceedings to be appointed conservator of his father's affairs.

At the conclusion of plaintiff's visit, however, Kodak did provide him with a copy of a pamphlet entitled "You and Kodak," which contained the summary description of KRIP that must be furnished to plan participants and beneficiaries under ERISA. Plaintiff alleges that this document fails sufficiently to apprise the average reader of the participant's rights and obligations under the plan.

Approximately two months after his visit to Kodak, on April 22, 1988, plaintiff was appointed his father's conservator.

There is no explanation for the delay by plaintiff and no reason is given for the failure to obtain a simple power of attorney. There is no evidence in the record that plaintiff could not have obtained a power of attorney from his father if his father had in fact directed him to obtain information from Kodak. Physical incapacity would not prevent one from validly executing a power of attorney by making a "mark" or by signing with the assistance of another. Cf. Re Irving's Will, 153 App. Div. 728, 138 N.Y.S. 784 (1912), aff'd 207 N.Y. 765, 101 N.E. 1106 (1913) (execution of will); Re Surak's Will, 48 N.Y.S.2d 400 (1944) (same).

After plaintiff's appointment as conservator, he returned to the Kodak Employee Benefits Office on April 26, at which time he allegedly was first informed that some of his father's pension benefits could be payable to a third-party as designated by the employee. While normally Kodak pension benefits are payable as a "straight-life" annuity to the plan participant (i.e., the employee), KRIP allows the participant to elect to have Kodak pay him a reduced pension, with the balance payable to a designated beneficiary, called the "contingent annuitant," following the participant's death.

It is also claimed that plaintiff learned then for the first time that to be effective, the written election to have benefits paid on this basis must be filed at least 180 days before the participant's death.

Consequently, plaintiff filed a written election on his father's behalf on April 28, 1988, designating himself as contingent annuitant. Unfortunately, Albert Keys died 171 days later, on October 17, 1988. Because Keys died fewer than 180 days after plaintiff filed the written election, Kodak denied plaintiff's request for benefits, which would have amounted to approximately $809 per month.

Plaintiff claims that Kodak breached its statutory duty under ERISA by refusing to discuss Keys' benefits with him in Febru-

ary of 1988 and by furnishing a summary plan description, contained in "You and Kodak," which failed to apprise the average reader that an election for a contingent annuity must be filed 180 days prior to the participant's death in order to become effective. Had he understood this requirement from the summary, plaintiff claims that he would have taken steps to accelerate his father's conservatorship proceedings, and that he thus might have been able to file the election sooner.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) requires summary judgment where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists if the evidence in the record when the motion is made would permit reasonable jurors to return a verdict in favor of the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The material facts here are not disputed.

■ Before deciding whether the summary plan description complies with the requirements of ERISA, I must determine as a threshold matter whether Kodak owed plaintiff any duty under the statute. If no duty was owed plaintiff, even assuming that the summary was misleading or deficient, plaintiff is entitled to no relief under ERISA. *See Lerra v. Monsanto Co.*, 521 F.Supp. 1257 (D.Mass.1981).

As defendants point out, ERISA's general declaration of policy states an intention to protect plan participants and their beneficiaries. *See* 29 U.S.C. § 1001(b). More specifically, § 1022, at issue here, requires that a summary plan description be furnished to plan participants and beneficiaries, and that it be written to reasonably

apprise participants and beneficiaries of their rights and obligations under the plan.

The parties do not dispute that, at the time he first visited the Kodak office in February of 1988, plaintiff was neither a plan participant nor a beneficiary within the meaning of ERISA.[1] The court, however, initially was concerned with the issue of whether, given the broad wording of the statutory definition of "beneficiary," set forth in note 1, plaintiff might have fallen within that category as of the date of his visit to Kodak.

Research has uncovered several cases in which courts have attempted to interpret the term "beneficiary" for the purpose of deciding whether a plaintiff has standing to sue under the civil enforcement provision of ERISA, 29 U.S.C. § 1132. *See, e.g., Sladek v. Bell System Management Pension Plan*, 880 F.2d 972 (7th Cir.1989); *Vogel v. Independence Federal Savings Bank*, 728 F.Supp. 1210 (D.Md.1990); *Lerra*, 521 F.Supp. 1257. These cases are also instructive on the issue of plaintiff's entitlement to disclosure as of February 1988.

In *Lerra*, 521 F.Supp. 1257 at 1263, the widow of a former benefit plan participant alleged that the defendant had failed under ERISA to disclose sufficient benefit information to the decedent at the time he made his election to receive pension benefits as a "single life annuity." The court found itself without jurisdiction because plaintiff, never having been designated as a joint annuitant, was not a "beneficiary" and thus lacked standing to sue for failure to disclose under ERISA. *See* 521 F.Supp. at 1263 (citing *Francis v. United Technologies Corp.*, 458 F.Supp. 84, 87 (N.D.Cal. 1978)); *see also Trombly v. Marshall*, 502 F.Supp. 29 (D.D.C.1980) (widow without standing to sue under ERISA where husband died before becoming "participant" in benefit plan).

Although the courts in *Sladek* and *Vogel, supra,* gave the term "beneficiary" a

---

**1.** Section 1002 provides in relevant part:

(7) The term "participant" means any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan ... or whose beneficiaries may be eligible to receive any such benefit.

(8) The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

broad reading in finding that the plaintiffs had standing, neither holding persuades me that plaintiff was a beneficiary as of the date of his Kodak visit. In *Sladek*, the benefit plan itself designated plaintiff, the deceased participant's spouse, as survivor annuitant, *unless* the participant elected to receive full pension benefits. Although it stressed ERISA's policy of protecting participants' families, the court based its holding that plaintiff had standing to sue on its finding that absent her husband's election, she would have been a beneficiary designated *by the plan*. See 880 F.2d at 978. Here, the exact opposite is true. Plaintiff would not be entitled to receive benefits *unless* his father were to elect to designate him as a contingent annuitant.

*Vogel*, too, is distinguishable. That case involved a participant's family's suit to recover health benefits which were denied to the participant in violation of ERISA. The court, again laying much emphasis on Congress' stated intent to protect plan participants and their dependents through passage of ERISA, found that plaintiff had standing. See 728 F.Supp. at 1220. In my view, a plan participant's family is much more likely a "beneficiary" of health benefits than of pension benefits, since it is often they who must otherwise incur the costs of health care for the participant. Where pension benefits are involved, however, the true beneficiary, *unless he chooses otherwise*, is the participant himself.

Although I am cognizant of Congress' intent to ensure broad protection for participants and their families, I nevertheless find that plaintiff, as of his initial visit to Kodak, did not qualify as a "beneficiary" of his father's pension plan, and he therefore was entitled to no disclosure. Insofar as plaintiff's father could have designated anyone, related or otherwise, to receive benefits, until he did so plaintiff stood no closer to "beneficiary" status than any other person.

Plaintiff maintains that, because his father told him to obtain benefit information from Kodak, he should be considered his father's agent as of the end of February, 1988. Therefore, asserts plaintiff, any duties owed to his father as a plan participant were then owed as well to plaintiff as his father's agent.

■ Although he cites several cases purporting to stand for the proposition that an agency need not be expressed in writing to be effective, plaintiff's reliance is misplaced. Kodak was well within its rights in February of 1988 to refuse to disclose the details of Keys' pension benefit entitlement until plaintiff could produce satisfactory proof of his status as Keys' agent.

It is a well established principle that one who deals with an agent does so at his peril, and must make a reasonable inquiry into the scope of the agent's authority. *See Karavos Compania Naviera, S.A. v. Atlantica Export Corp.*, 588 F.2d 1 (2d Cir.1978); *Property Advisory Group, Inc. v. Bevona*, 718 F.Supp. 209, 213 (S.D.N.Y. 1989); *Collision Plan Unlimited, Inc. v. Bankers Trust Co.*, 63 N.Y.2d 827, 482 N.Y.S.2d 252, 472 N.E.2d 28 (1984). A party seeking to rely on an agent's apparent authority must not fail to heed warnings or inconsistent circumstances surrounding the asserted authority. *See Bevona*, 718 F.Supp. at 213.

On the facts before me, Kodak was aware, at the time of plaintiff's initial visit, of facts and circumstances casting doubt upon the scope of plaintiff's actual authority. Uncontradicted evidence submitted by defendants shows that Kodak had on file the names and addresses of several other members of Keys' family, any of whom might have been a potential beneficiary of Albert Keys' pension benefits. Moreover, Kodak was aware that Keys had designated plaintiff's brother as co-beneficiary of his life insurance policy. Kodak also knew that Keys had never, in his long years of service, designated any contingent annuitant to receive benefits.

The duty of reasonable inquiry inures to the benefit of the third party dealing with an agent, as well as the principal on whose behalf the agent purports to act. Not only was Kodak not remiss in refusing to discuss important and confidential benefit information with someone claiming, but unable to prove, actual authority to act on Keys' behalf, the company was prudent in refusing to do so. Kodak had a responsi-

bility to its employees not to disclose private information without proper authorization. Especially in Keys' grave medical condition, Kodak had to be wary of those who could take advantage of him.

Under the circumstances of this case, Kodak was not obligated to disclose confidential employee information until it received proper evidence that plaintiff was in fact authorized to act for its employee.[2]

Because I find as a matter of law that at the time plaintiff first requested information from Kodak, defendants owed plaintiff no statutory duty under § 1022, I find it unnecessary to determine whether issues of fact remain concerning the adequacy of the summary description. Nevertheless, it seems clear that the information contained in the summary description, "You and Kodak," adequately advised plaintiff of the employee's right to elect a contingent annuitant as well as the proviso that this election would not be effective for 180 days.

At page 109 of the summary, under the heading "Retirement, Survivor Income Benefits", it states that there are several benefit options which can provide income "for your spouse, or any other person you designate." Under the section, "Payment of Benefits", at page 112, it clearly states that the optional form of payment to a spouse or other designated person "becomes effective 180 days after the company receives [the] written election notice."

## CONCLUSION

Defendants' motion for summary judgment is granted and the complaint is dismissed.

IT IS SO ORDERED.

---

**2.** I note that the United States Department of Labor has taken the position that if information concerning an employee benefit plan must be furnished to a participant under section 104(b)(4) or 105(a) of ERISA, such information must also be furnished to a third party requesting it, *provided the participant authorizes in writing the release of the information to such* *third party.* *See* ERISA Opinion Letter 79–82A (1979).

