**Emma ANDERSON, Plaintiff–Appellee,**

v.

**FLEXEL, INC., Defendant–Appellant.**

Nos. 94–2460, 94–2845.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1994.

Decided Feb. 10, 1995.

Gill M. Garman (argued), Sebat, Swanson, Banks, Garman & Townsley, Danville, IL, for plaintiff-appellee.

Don P. Campbell, Wallace, Campbell, Bunch, Shambach, Rennick & Orr, Covington, IN, Dara L. DeHaven (argued), Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, GA, for defendant-appellant in No. 94-2460.

Dara L. DeHaven (argued), Rosemary Globetti, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, GA, for defendant-appellant in No. 94-2845.

Before REAVLEY,* FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Emma Anderson sued her deceased son's employer, Flexel, Inc. ("Flexel"), for statutory penalties under the Employee Retirement Income & Security Act ("ERISA"), 29 U.S.C. § 1132(c), for its failure to provide her with documents relating to her son's life insurance policy. The district court awarded Ms. Anderson penalties and attorney's fees and this appeal followed. We now affirm in part, reverse in part and remand.

I.

Harry Anderson, a Flexel employee and union member, participated in a group life insurance policy issued by Jefferson Pilot Life Insurance Company ("Jefferson Pilot") to Flexel pursuant to a collective bargaining agreement between Flexel and the union. On July 1, 1983, Anderson completed the "Hourly Benefit Enrollment Record" for his life insurance policy. He named his mother, Emma Anderson, in the space provided for "Insurance Beneficiary Designations." Below that, the space marked "Other Beneficiary/Or Change in Beneficiary" listed Harry's

---

* The Honorable Thomas M. Reavley, of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

daughter, "Constlasa [sic] M. Wilson." Underneath these designations the enrollment record provided:

If more than one beneficiary is designated, settlement will be made in equal shares to such of the beneficiaries (or beneficiary) as survive the insured, unless otherwise provided herein.

On February 25, 1986, Harry signed a "Request For Change of Name, Beneficiary Or Replacement Of Certificate" form. "Constlasa Wilson" was typed in the space designated "Change of Beneficiary." "Constlasa" was then crossed out by pen and "Constelsa" was handwritten above it. The request form stated: "By this request I revoke all prior beneficiary designations." Diane Luzader, Flexel's personnel clerk, witnessed Harry's execution of this form. At trial, she testified that Harry had intended to change his insurance beneficiary to Constelsa. On cross-examination, however, Luzader admitted that she had previously testified in a deposition that she could not recall what type of change Harry wanted to make with the form.

Harry died while leaving work on December 30, 1986. Flexel's Industrial Claims Manager contacted Emma, who Flexel had determined was Harry's next of kin, to tell her that Harry had passed away. While at the Leek Funeral Home to make arrangements, the funeral director told Emma that Flexel had informed him that a "child was involved" with the life insurance. Emma called Flexel and was simply told that "it was up to the Wilson family." Testimony at the bench trial and memoranda between Flexel and Jefferson Pilot indicate that both companies knew about a problem with Harry's beneficiary designation from the day he died. Even with this confusion, however, Jefferson Pilot paid the full policy benefit to Constelsa Wilson's guardian on October 26, 1987.

Emma retained attorney Curtis Anderson, who on March 18, 1987, requested from Flexel a copy of Harry's personnel file. Flexel told him that it did not release such information unless pending litigation required its disclosure. Attorney Anderson made another request, to which Flexel failed to respond. On August 15, 1987, James Anderson,

Emma's son, asked Flexel for information, for himself and his mother, about Harry's insurance beneficiary. Flexel did not respond to this request. Finally, on October 3, 1988, attorney Richard Holmes requested information regarding Harry's life insurance. Once again, Flexel failed to respond.

Emma filed suit on March 3, 1992, alleging that Jefferson Pilot had wrongly paid out Harry's insurance benefits and that Flexel had failed to provide her with requested information, in violation of 29 U.S.C. § 1132(c). Jefferson Pilot filed a third-party complaint against Constelsa who then settled the dispute over the insurance by paying Emma half of the policy proceeds. The district court first noted that Constelsa's name on the enrollment record had been typed by a different machine than had been used to type Emma's name and the rest of the information on the record. The court inferred that Luzader had typed Constelsa's name on both beneficiary forms on February 26, 1986. The court then held that Harry had not intended to remove his mother as a beneficiary, but had only intended to add his daughter as a co-beneficiary with the "Change in Beneficiary" form.

In light of these findings, the district court held that Jefferson Pilot had wrongly paid the policy proceeds to Constelsa. The court ordered Jefferson Pilot to pay Emma $19,234.08 in damages, a stipulated amount equal to 18% interest on the proceeds not distributed according to the terms of the policy. Jefferson Pilot has not appealed this decision.

Regarding Flexel's liability, the district court first held that Emma was a beneficiary under the insurance policy and was therefore entitled to request and receive certain information under ERISA. 29 U.S.C. §§ 1002(8), 1024(b)(4). The court then held that the requests made on behalf of Emma by her son and her attorneys had triggered Flexel's duty to provide the requested information. While finding that Flexel's failure to provide requested information was not malicious, the court nonetheless, considering all of the circumstances, imposed on it a $50.00 per day fine from the date of James Anderson's letter to the date Flexel finally provided the information, which occurred only after Emma had

filed this suit. This resulted in a total fine of $87,600. The court also ordered the defendants to pay costs of $455.30 and attorney's fees of $52,128.50, the lodestar doubled, which it later decreased to $26,064.25.

## II.

On appeal, Flexel makes three arguments: that the district court improperly held that Emma's claims were not time-barred; that the district court improperly held that Emma made a request requiring Flexel to respond; and that the district court improperly awarded and calculated attorney's fees. We affirm the district court's determination that Emma's claims were timely filed, reverse in part and affirm in part the court's decision regarding Emma's requests for information, vacate the court's award of attorney's fees, and remand for further findings.

### A.

Prior to trial, Flexel argued that Indiana's two-year statute of limitations for employment-related claims barred Emma's action. Ind.Code 34–1–2–1.5(a).[1] The district court rejected this argument and found that because Harry's "relation to Flexel was based upon a written collective bargaining agreement and a written group life insurance," Indiana's ten-year statute of limitations for actions based on written contracts applied. Ind.Code 34–1–2–2(6). It therefore held that Emma's claims were not time-barred. In its post-judgment motions, Flexel for the first time urged that the two-year statute of limitations pertaining to "forfeiture[s] of penalty given by statute," Ind.Code 34–1–2–2(1), applies to this case because 29 U.S.C. § 1132(c)[2] is essentially penal in nature. Flexel thus asks us to reverse the district court's decision. We review statute of limitations determinations *de novo. Union Carbide v. State Board of Tax Com'rs.*, 992 F.2d 119, 121 (7th Cir.1993).

While we might be inclined to find that the two-year statute of limitations for statutory penalties applies to § 1132(c) claims, our inclination does not matter because Flexel has waived this argument. Flexel raised an affirmative statute of limitations defense in its answer to Emma's complaint, but argued only the employment-related claim statute pre-judgment. Flexel did not contend that the statutory penalty limitations period barred Emma's claims until its post-trial Motion to Amend Findings of Fact and/or for a New Trial. We have repeatedly stated that post-judgment motions cannot be used to raise arguments or legal theories that could have been and should have been brought before judgment. *Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 280 (7th Cir.1991); *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 425 (7th Cir.1989); *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986); *see also MEI International, Inc. v. Schenkers International Forwarders, Inc.*, 807 F.Supp. 979, 990 (S.D.N.Y.1992) (failure to raise statute of limitations defense prior to post-trial motions resulted in waiver). Furthermore, we have specifically held that a general allegation of a statute of limitations defense did not preserve for appeal a specific two-year statute, which actually applied, where the defendant had only argued a different limitations period to the district court. *Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1196–97 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *see also Saunders v. George Washington University*, 768 F.Supp. 854, 868 (D.D.C.1991) (failure to argue specific statute of limitations, even though others were argued, constituted a waiver).

In arguing that it has not waived the statutory penalty statute of limitations, Flexel cites to *Brooms v. Regal Tube*, in which we stated that "[a]t a minimum, a party must request [pre-judgment] interest in a post-

---

1. Flexel made this argument in a motion to dismiss which the district court denied on November 9, 1993, the first day of the bench trial.

2. That section states, in relevant part:
 Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, ...
 29 U.S.C. § 1132(c).

trial motion if he or she has failed to plead the relief in the original complaint." 881 F.2d 412, 424 n. 9 (7th Cir.1989). Such late presentation of the right to·pre-judgment interest is allowed, however, because Fed. R.Civ.P. 54(c) specifically states that "every final judgment shall grant the relief to which a party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." *See William-son v. Handy Button Machine Co.,* 817 F.2d 1290, 1298 (7th Cir.1987). There is no similar exception for statute of limitations defenses. In addition, contrary to Flexel's suggestion, we did not allow the plaintiff to argue on appeal an issue not brought before the district court in *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129 (7th Cir.1992). Rather, in that case we simply held that although the district court had treated the plaintiff's complaint as alleging only one ERISA claim, the complaint actually raised two claims. We then held that the plaintiff had adequately preserved the second claim for appeal through references in her appellate brief. *Id.* at 1135. Here, Flexel made no mention of the statutory penalty limitations period until its post-judgment motions. We thus affirm the district court's decision that Emma's claim is not time-barred.

### B.

 Section 1024(b)(4) of ERISA provides, in part that:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated....

29 U.S.C. § 1024(b)(4). The district court apparently found that all of the requests on Emma's behalf constituted proper requests but only awarded fees from the date of James Anderson's letter. Flexel argues that Emma never made a request that required it to provide her with information. Whether a request is proper under this section is a mixed question of law and fact. When such questions present a fact specific application of the law, such as here, we review the district court's decision under a clearly erroneous standard. *See, e.g., United States v. Humphrey,* 34 F.3d 551, 554 n. 1 (7th Cir. 1994); *FDIC v. Bierman,* 2 F.3d 1424, 1432 (7th Cir.1993); *see also Barber v. Ruth,* 7 F.3d 636, 642–43 (7th Cir.1993).

 A request for documents under § 1024(b)(4) necessitates a response from the plan administrator when it gives the administrator clear notice of what information the beneficiary desires. *Moothart v. Bell,* 21 F.3d 1499, 1503 (10th Cir.1994); *Curry v. Contract Fabricators Profit Sharing Plan,* 744 F.Supp. 1061, 1066 (M.D.Ala.1988), *aff'd,* 891 F.2d 842 (11th Cir.1990). For example, the Fifth Circuit has held that "a scribbled note at the bottom of a Social Security award certificate requesting 'a copy of the policies covering my contract for salary continuation'" did not constitute a proper request necessitating a response from the administrator. *Fisher v. Metropolitan Life Insurance Co.,* 895 F.2d 1073, 1077 (5th Cir.1990). Courts have suggested, however, that an administrator's knowledge of surrounding circumstances or the information being requested may require a response to an otherwise general request. *See Boone v. Leavenworth Anesthesia, Inc.,* 20 F.3d 1108, 1111 (10th Cir.1994) ("[V]iewing the letter in its entirety and considering Moburg's understanding that a request was being made for [plan information], we hold that it was not clearly erroneous for the district court to determine the letter constituted a sufficient written request...."); *Fisher,* 895 F.2d at 1077 ("Nothing in either the request or the response indicates that Metropolitan *knew or should have known* that Fisher had requested a copy of any document relating to the ... plan.") (emphasis added).

 We must now determine whether any of Emma's requests triggered Flexel's duty to respond. The March 18, 1987, letter from attorney Anderson stated that the Anderson family had retained him "to investigate the circumstances of [Harry's] death." The letter requested "a full copy of Mr. Anderson's personnel file and any other related documents, especially those which may pertain to

the circumstances of his death which occurred on or about December 30, 1986." Attorney Anderson's second letter, dated April 6, 1987, stated that as a result of his investigation "we may be filing a Workmen's Compensation Claim or other third party action against those who may be responsible or who may have contributed to his death." The letter continued "[i]t is hopeful that the information in [the] personnel file will help me evaluate the case in an effort to decide whether litigation should be pursued or not." These letters discussed actions completely unrelated to Harry's life insurance policy and asked for his personnel file, which would contain documents not covered by § 1024(b)(4). Therefore, we hold that the district court erred in finding that these letters gave Flexel clear notice of which documents the attorney sought, if any, of those Flexel must provide under § 1024(b)(4).

■ In August, 1987, James Anderson wrote to Flexel requesting certain information "because my mother wants to know, and so do I ... and I [want to] protect my Mother [sic] interest in this matter." James then asked Flexel to stop payment of Harry's life insurance proceeds to Constelsa Wilson because James and Emma planned to contest such payment in court. The letter further requested the "record of when my brother was supposed to have changed the beneficiary from my mother to [Constelsa]." Flexel argues that it did not have to respond to this letter because § 1024(b)(4) only requires administrators to respond to requests from participants or beneficiaries and Flexel had no written proof that James had the authority to make this request for his mother. Whether written authorization must accompany a request from a third-party is a question of law which we review *de novo*. *Bierman*, 2 F.3d at 1431.

In *Keys v. Eastman Kodak Co.*, 739 F.Supp. 135 (W.D.N.Y.1990), *aff'd without opinion*, 923 F.2d 844 (2d Cir.1990), the court held that the defendant correctly refused to respond to a request for information from the son of an incapacitated plan participant, absent written authorization to act as the participant's agent. The company was aware of "facts which shed doubt on the plaintiff's

actual authority" and had the names and addresses of other family members who could have been beneficiaries. The court continued:

> Not only was Kodak not remiss in refusing to discuss important and confidential benefit information with someone claiming, but unable to prove, actual authority to act on [the beneficiary's] behalf, the company was [also] prudent in refusing to do so. Kodak had a responsibility to its employees not to disclose private information without proper authorization.

*Id.* at 138–39. We agree with this analysis. In this case, Flexel could have been concerned about releasing confidential information regarding Emma to anyone else without proof of that person's authorization to act on her behalf. Furthermore, the Department of Labor ("DOL") has issued an opinion letter stating that absent written authorization, "it is the Department's view that a plan is not required by [§ 1024(b)(4)] of ERISA to provide such information to persons who are neither participants nor beneficiaries." Op. No. 82–21A (April 21, 1982). We thus hold that Flexel did not have to respond to James Anderson's letter.

■ Attorney Richard Holmes made the final request for information on October 3, 1988. This letter also failed to include specific written authorization to act on Emma's behalf. One court has held that the DOL's opinion letter discussed above requires that attorneys must also provide written authorization for making requests on behalf of a beneficiary or participant. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1072 (6th Cir.1994). Without determining whether the opinion letter requires such a reading or whether such a reading would constitute a reasonable interpretation of § 1024(b)(4), we simply recognize the existence of the long-standing legal presumption that an attorney has the authority to act on behalf of the person he represents. *See, e.g., FDIC v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir.1992); *Terrain Enterprises, Inc. v. Western Casualty & Surety Co.*, 774 F.2d 1320, 1322 (5th Cir.1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 184 (1986); *Graves v. United States Coast Guard*, 692 F.2d 71, 74 (9th Cir.1982); *Dorey*

*v. Dorey*, 609 F.2d 1128, 1131 n. 5 (5th Cir. 1980); *Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 45 (4th Cir.1968); *Communist Party, U.S.A. v. Commissioner of Internal Revenue*, 332 F.2d 325, 327–28 (D.C.Cir.1964). We need not decide whether the absence of written authorization is fatal here, however, because Flexel has not contested Holmes' right to request information on Emma's behalf but has simply argued that the letter did not give Flexel clear notice of what information the attorney was seeking.[3]

Holmes' letter asked Flexel to advise him as to "any group life insurance that [Harry] might have had." While the letter does not request the beneficiary designation forms or policy handbook by name, an administrator cannot use such technical considerations as an excuse for its failure to respond. *See Bartling*, 29 F.3d at 1071 ("[The document] so obviously contain[ed] the information that plaintiffs expressly described when they requested 'worksheets' that defendants either knew or should have known that they were obliged to furnish it in response to plaintiffs' request. Imposing a burden upon plaintiffs to ask for [documents] by name rather than by description would be contrary to the spirit of § 1024(b)(4)."). Flexel also knew from the day of Harry's death that Emma was a potential beneficiary under his life insurance policy. We therefore hold that based on Holmes' letter and the information Flexel had in its possession, the district court did not err in holding that Flexel knew or should have known which documents were being requested and should have provided them to Emma within thirty days. Because we have held that the letter from James Anderson did not constitute a proper request, however, we remand for a recalculation of the statutory penalty.

### C.

In ERISA actions "the court in its discretion may allow reasonable attorney's fees and costs of the action to either party." 29 U.S.C. § 1132(g)(1). The district court awarded Emma attorney's fees of $26,064.25 and costs of $455.30. Flexel contends that the court abused its discretion in making this award, both because it did not consider a five-factor test in determining whether to award fees and because it ordered Flexel to pay the full amount of the award, which included time for work on claims not involving Flexel.

▮ In the past, we have utilized a five-factor test to determine whether a district court properly awarded attorney's fees in an ERISA case. *Davidson v. Canteen Corp.*, 957 F.2d 1404, 1409–10 (7th Cir.1992); *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 698 (7th Cir.1991). The factors include:

(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Janowski v. Int'l Brotherhood of Teamsters Local 710*, 673 F.2d 931, 940 (7th Cir.1982), *vacated on other grounds*, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). We believe that the district court attempted to follow this test, although not explicitly. The court stated that fees "should be awarded because of the intransigent conduct of the defendants," who had "willfully" failed to fulfill their duty of disclosure. The court then found that the defendants could satisfy the fee award and that "shifting this cost of the litigation to them may serve to deter them and others like them from acting in a similar manner in future cases." Thus, the court made findings regarding the first three factors, although it failed to address the final two factors.

This omission is not necessarily fatal, however, because district courts can also use an alternate test which we discussed in *Bittner v. Sadoff and Rudoy Industries*, 728 F.2d 820 (7th Cir.1984). This test, which "creates a modest presumption .. in favor of awarding reasonable attorney's fees to the winning party ..." looks to whether "the loser's posi-

---

**3.** At oral argument, Flexel abandoned this argument and conceded that while the letter constituted a proper request to which it did not respond, Emma's action was barred by its proffered statute of limitations. We will nonetheless discuss the letter.

tion, while rejected by the court, had a solid basis—more than merely not frivolous, but less than meritorious." *Id.* at 830. Since then we have stated that the "bottom-line question" under either approach "is essentially the same: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Meredith v. Navistar Intern. Trans. Corp.,* 935 F.2d 124, 128 (7th Cir. 1991); *see also Production and Maintenance Employees' Local 504 v. Roadmaster Corp.,* 954 F.2d 1397 (7th Cir.1992); *Giardono v. Jones,* 867 F.2d 409, 414 (7th Cir.1989).

■ The district court never explicitly addressed the justification for Flexel's litigating position. In its opinion, the court noted that "it was disingenuous to argue that the repeated requests for information made on behalf of Emma Anderson were inadequate." In addition, the court characterized Flexel's actions as "stonewalling," and stated that they revealed "an arrogance or stupidity" on Flexel's part. These statements do not amount to a sufficiently reasoned explanation for the court's award and the district court thus failed to adequately support its fees award under any of the approved approaches. While we can affirm an award based on our own review of the record, we are not certain that "it is clear that the defendant's litigating position in the district court was not substantially justified." *Local 504,* 954 F.2d at 1405. By this we do not imply that the court should refuse to award fees; we merely indicate our desire to have the district court, which is more intimate with this case, explain its reasoning and make the decision.

■ Flexel also contends that the district court abused its discretion in ordering Flexel to pay all of Emma's attorney's fees, including those pertaining to claims which did not involve Flexel. We first note that here the court entered the award against the *defendants.* Therefore, Jefferson Pilot, who has not appealed the district court's decision, must contribute to any payment of the award. District courts usually have great discretion whether to apportion fees among defendants. *See Tidwell v. Schweiker,* 677 F.2d 560, 569 (7th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 806 (1983); *see also Corder v. Gates,* 947 F.2d

374, 383 (9th Cir.1991); *Koster v. Perales,* 903 F.2d 131, 139–40 (2d Cir.1990). Courts have suggested, however, that fees should be apportioned in certain circumstances. *See, e.g., Council for Periodical Distributors Ass'ns v. Evans,* 827 F.2d 1483, 1487 (11th Cir.1987) (appropriate to apportion fees between an "active instigator of a wrong and a more passive co-defendant who had a more peripheral or ministerial role in the wrong"); *Dean v. Gladney,* 621 F.2d 1331, 1340 (5th Cir.1980) (must apportion fees when defendants are not joint tortfeasors), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981). We believe that this case, where Emma brought separate claims against each of the defendants, might also be an appropriate situation for apportionment. On remand, therefore, the district court should apportion, to the extent possible, the fees as they relate to the individual defendants, with recognition of the fact that some time may have been spent in relation to both Flexel and Jefferson Pilot.

For the foregoing reasons, this case is affirmed in part, reversed in part and remanded.