GEORGE H. BALL *vs.* GEORGE P. HARRISON.

Essex.    May 12, 1943. — July 1, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Equity Jurisdiction*, Accounting, Remedy at law, To reach and apply, Equitable attachment. *Fiduciary*.

Merely that the defendant, a debtor of the plaintiff, intended to alienate or encumber "all of his property" did not afford a ground for equitable relief by an injunction against his doing so, as the plaintiff had an adequate remedy at law by attachment.

A suit in equity for an accounting generally cannot be maintained unless there is a fiduciary relation between the parties or the account is so complicated that it cannot conveniently be taken in an action at law.

Allegations, merely that an employer had agreed to pay his employee a certain sum weekly plus a stated percentage of the profits of the employer's business and to account to the employee respecting the profits quarterly, were not sufficient to show a fiduciary relation of the employer toward the employee entitling the employee to maintain a suit in equity for an accounting.

BILL IN EQUITY, filed in the Superior Court on January 19, 1943.

A demurrer was sustained by *Burns*, J., and a final decree was entered by order of *Donnelly*, J.

*C. Ingram*, for the plaintiff.

*J. J. Foley*, for the defendant.

Cox, J.    The defendant's demurrer assigns as reasons therefor, that the plaintiff's bill does not set forth any ground for relief in equity and that the plaintiff has a complete and adequate remedy at law.    An interlocutory decree was entered sustaining the demurrer with leave to amend into an action at law within thirty days, and a final

decree, dismissing the bill, was entered more than thirty
days thereafter. The plaintiff appealed from both decrees.

The bill alleges that the plaintiff and defendant entered
into an agreement by the terms of which the plaintiff,
sometime after June 8, 1940, was to be an "employer" (*sic*)
of the defendant; that the plaintiff was to devote "full
time" to the defendant's business and, in return for his
"services" was to receive from the defendant $40 a week
plus twenty-five per cent of the profit from the defendant's
business; that the defendant was to receive $50 per week
plus seventy-five per cent of the profit; that the defendant
was to account to the plaintiff for such profits quarterly;
that the plaintiff devoted his full time to the defendant's
business until about November 21, 1942, when he was dis-
charged; that the plaintiff has frequently and regularly
requested that the defendant give him an accounting of the
profits, but that no account has been rendered; that the
plaintiff is informed and believes and therefore alleges that
the defendant made a profit of $25,000 between the date
of the agreement and the date of the plaintiff's discharge;
and that the defendant is about to enter the armed service
of the United States, and in preparation therefor "he in-
tends to alienate or encumber all of his property at some
time in the near future." The prayers of the bill are for a
preliminary injunction restraining the defendant from alien-
ating or encumbering his property except in the usual course
of his business; that both parties be given a speedy hearing
"to establish the merits of the case"; and that the sum
due the plaintiff be determined and ordered paid.

1. The allegations in the bill relating to the intended
alienation or encumbering by the defendant of his property
afford no grounds for relief. Remedies at law by way of
attachment and execution are adequate. It is not alleged
either expressly or inferentially that the defendant's prop-
erty cannot be so reached. See G. L. (Ter. Ed.) c. 214,
§ 3 (7); *Maguire* v. *Reough*, 238 Mass. 98, 100.

2. The plaintiff concedes that he was not a partner of the
defendant, but contends that the agreement to share profits
established a fiduciary relationship. The question that has

been argued is whether the allegations of the bill are sufficient to entitle the plaintiff to equitable relief by way of an accounting. The general rule stated by Chief Justice Gray in *Badger* v. *McNamara*, 123 Mass. 117, 119, to the effect that, in order to maintain a bill in equity for an accounting, it must appear from the specific allegations that there was a fiduciary relation between the parties or that the account is so complicated that it cannot conveniently be taken in an action at law, has been repeatedly affirmed. *Chamberlain* v. *James*, 294 Mass. 1, 6–7, and cases cited. G. L. (Ter. Ed.) c. 214, § 3 (6). There is no suggestion in the bill that the accounts are of such a nature that they cannot be conveniently and properly adjusted and settled in an action at law. It follows that the plaintiff shows no right to maintain his bill because of the state of the account.

3. The important question for determination is whether the allegations of the bill disclose a fiduciary relationship. The plaintiff relies upon *Pratt* v. *Tuttle*, 136 Mass. 233, *Craine* v. *Royster*, 255 Mass. 118, and *Hooper* v. *Mayo*, 298 Mass. 411, 413. The *Pratt* case was a bill for an accounting of the net profits of the sale of certain patented wares, which were made and sold under patents belonging to, or controlled by, the plaintiffs, in pursuance of agreements between the plaintiffs and two of the defendants. By these agreements, those defendants were to purchase the patents and, to that end, were to make and sell the patented articles and "pay over one half the net profits" to the plaintiffs until the whole agreed price was paid, whereupon the patents were to be transferred. The court, speaking through Holmes, J., said that there was no doubt that the bill could be maintained against those defendants; that they had agreed to turn over net profits "as such"; that they had made themselves trustees, or quasi trustees, of a specified identified fund, and that such a fiduciary relation "founds the equitable jurisdiction invoked, as well as cross demands and complexity of accounts." (Page 233.) The *Craine* case was a bill for an accounting for the defendant's management and use of real estate, which the plaintiff had conveyed to the defendant's wife with the defendant's agree-

ment to manage it for the plaintiff, it having been con-
veyed to secure the defendants for payments made to the
plaintiff, and for any indebtedness the defendant might in-
cur in the management of it.  It was held that a fiduciary
relationship was shown which gave the court jurisdiction
in equity to examine the entire account of the plaintiff and
her agent in the management of her property.  The *Hooper*
case was a bill for an accounting.  One Hooper entered into
an agreement with the defendant, who was his creditor,
whereby the defendant purchased a contingent interest of
Hooper under a will and agreed that, if the interest became
vested, he would deduct from what he had received on
account of it the amount of his debt and certain other sums
and pay over the balance to Hooper.  The interest later
became vested and the defendant received a substantial
sum thereunder.  Thereafter, the parties had an accounting
which was complete except for the sum of $3,000 which
remained in the hands of the defendant, and a written
agreement was entered into which recited the possibility
that the defendant might be held liable for income taxes or
gift taxes by reason of his having received and dealt with
the interest under the will, and the desire of the parties
that any such liability should be paid out of the fund.  It
was provided that the sum remaining in the defendant's
hands should be retained for the purpose of exonerating him
from any tax liability and for the payment of any counsel
fees or expenses that might be incurred by him to that end.
It was held that the agreement created a fiduciary relation
that entitled the plaintiff, assignee of Hooper, to an account-
ing in her suit in equity.  We think that these cases are
distinguishable from the case at bar.

The plaintiff concedes that the word "employer" in the
bill should read "employee."  The defendant was the sole
owner of the business to which the plaintiff was to devote
his full time, in return for which he was to receive $40 a
week and twenty-five per cent of the profits from the de-
fendant's business.  The plaintiff concedes that he was not
a partner.  In *Brown* v. *Corey*, 191 Mass. 189, a bill for
discovery and an accounting, it was said that the relation

between the defendants and the plaintiff disclosed by the bill was the ordinary relation between a broker and his client or customer which, "though it involves a certain amount of trust and confidence in the broker on the part of the customer, is not a fiduciary relation, but a relation as debtor and creditor." (Page 191.) It was also said in that case that the facts resembled those in *Badger* v. *McNamara*, 123 Mass. 117, and *Ward* v. *Peck*, 114 Mass. 121, where it was held that the plaintiff was not entitled to relief. In the *Badger* case the plaintiff alleged that the defendants had agreed to pay him a certain commission upon merchandise consigned to the defendants; that large amounts had been so consigned; that the plaintiff was to draw $100 per month, and that every ninety days the defendants were to make up and settle the account in full; that the plaintiff had repeatedly called upon the defendants to account, as provided by the agreement, but that they had refused. It was pointed out that the earlier cases of *Bartlett* v. *Parks*, 1 Cush. 82, and *Hallett* v. *Cumston*, 110 Mass. 32, were distinguishable. See *Furber* v. *Dane*, 204 Mass. 412, 415–417. In the *Ward* case, the bill alleged that the plaintiff "was in the habit of taking loans of money" of the defendant's intestate, Peck; that, in taking the loans, he deposited with Peck, as collateral security, evidences of indebtedness; that he paid money from time to time to release the securities or a portion of them, but that Peck, who kept the accounts, had failed to account to him and that the estate was indebted to him in a stated sum on account of the various transactions. In *Campbell* v. *Cook*, 193 Mass. 251, 256, it was said that the bare relation of principal and agent may be insufficient to maintain a bill in equity by the principal for an accounting unless the account is so complicated that it cannot conveniently be stated or settled at law, but it was pointed out that the agreement of the parties created a fiduciary relationship. See *Putnam* v. *Scahill*, 266 Mass. 537, 539. In *American Stay Co.* v. *Delaney*, 211 Mass. 229, 233, it was said that the bare relation of master and servant, although it placed the defendant under an implied obligation not to divulge or use the plaintiff's se-

crets or duplicate and use its special machinery, did not constitute him a fiduciary, who could be compelled to account in equity for wages or salary paid under the mistaken belief that his services were uninterruptedly bestowed on the plaintiff. The case at bar is distinguishable from cases where property has been turned over by a plaintiff to a defendant under an agreement relative to its management or use, see *Tateum* v. *Ross*, 150 Mass. 440, 444; *Shea* v. *Shea*, 296 Mass. 143; and *Hooper* v. *Mayo*, 298 Mass. 411, and from cases like *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111.

We are of opinion that the allegations of the bill do not disclose a fiduciary relation between the parties. It does not appear that the defendant, as the plaintiff's employer, was required to set apart the money received from the conduct of his business as a separate and distinct fund. For all that appears, the defendant, in the conduct of his business, had a right to regard the receipts from it as his own. It is true that, in accordance with the terms of the contract, he was obligated to pay the plaintiff not only a weekly salary but also twenty-five per cent of the profit from the business. From week to week, and if profits were made, the defendant became a debtor of the plaintiff. It is elementary that if he failed to meet his obligation under the contract, an action accrued to the plaintiff to recover whatever was due him. No doubt the plaintiff trusted the defendant. Trust is necessarily involved in any contract of this character. Every employee, whether he thinks of it or not, necessarily trusts his employer to meet his obligation to pay for services rendered where they are not paid for in advance, but it is quite another thing for the employee to contend that the relation of employer and employee is one in which the employer is a fiduciary with respect to the payment of agreed compensation. We are of opinion that, despite the fact that the plaintiff was entitled to receive a part of the profits from the defendant's business and that the defendant agreed to account for such profits, the bill, as a whole, fails to disclose any fiduciary relation existing between the parties. It follows from

what has been said that the demurrer was rightly sustained.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*