Welch, J.
A. Procedural Background
The parties have agreed to have the Court render judgment on plaintiffs claims of constructive trust and for an accounting. The parties agree that these two claims sound in equity. The plaintiffs two other claims (for breach of fiduciary duty and conversion) and defendant’s counterclaim for quantum meruit were tried to a jury. The jury found that the defendant had converted certain funds of the plaintiff but concluded that the plaintiff suffered no damages. In addition, the jury found that the plaintiff had not acted reasonably in discovering the conversion. In its special verdict form, the jury also found that the defendant did not hold a fiduciary position vis-a-vis the plaintiff and, therefore, no breach of fiduciary duty occurred. Finally, the jury ruled against defendant’s counterclaim based upon quantum meruit.
B. Relevant Factual Findings
The plaintiff and defendant lived together in a close, loving relationship for sixteen years. As defendant Spracklin testified, the relationship “was as supportive and warm as any heterosexual relationship.” During the period of time 1970 to 1986, the parties jointly owned two rental properties and held both a checking and a savings (or passbook”) account at Mutual Bank. Plaintiff Connolly obtained a B.A. and a MBA degree during the relationship. Connolly sometimes referred to her MBA degree as “our degree” when discussing it with Spracklin. Defendant Spracklin did not pursue any education past the high school level.
Plaintiff Connolly held well paying, managerial positions at two large companies during this period while defendant Spracklin either tended the home or held lower paying, more menial jobs.
From approximately 1981 through 1986, plaintiff Connolly utilized a unique and questionable tax practice; she claimed defendant Spracklin as her “employee” for tax purposes in order to obtain certain advantageous deductions. Trial testimony established that this “salary” was a sham to evade taxes as Sprackliris “salary” was not related to any particular work performed by Spracklin. The salary amount was decided annually and privately by plaintiff Connolly and her tax advisor and was only determined by how much income Connolly wished to shield from tax liability. The majority of the “salary” money went back into the joint accounts. Plaintiff Connolly also negotiated certain financial arrangements for the couple including tax arrangements and obtaining an equity loan on one of the jointly-owned homes. Defendant Spracklin followed Connolly’s guidance in these financial matters.
Defendant Spracklin performed most of the bookkeeping for the couple. The bank books were located in her bedroom, although the plaintiff had access to them. Both parties signed each other’s names to checks upon occasion.
In mid-November 1986 the relationship began to slowly unravel. Plaintiff Connolly took a promising job in Michigan, leaving behind Spracklin, the joint accounts, and the joint property. Spracklin continued to maintain the properties and paid expenses for the properties from the joint accounts. The plaintiff also requested and received from Spracklin significant sums of monies from the joint accounts while she was in Michigan. The majority of the funds deposited in the joint passbook account represented the severance “package” Connolly received from her former employer some months before leaving for Michigan.
In December 1986, approximately one month after Connolly’s departure to Michigan, defendant Spracklin withdrew $27,000 from the joint account and placed the vast bulk of that sum in a Merrill Lynch cash management account which she opened. When Spracklin withdrew these funds from the passbook account she made a written notation in the passbook that the withdrawal represented a gift from Connolly. The Merrill Lynch account listed both parties as “joint tenants with a right of survivorship.” Plaintiff Connolly *461 knew of this withdrawal and the opening of the Merrill Lynch account.
The defendant claims that the $27,000 was a parting gift to her from plaintiff Connolly. Spracklin testified that Connolly gave her the money in the joint savings account during the course of a nostalgic, romantic evening discussion during which Connolly stated that she wished to recompense Spracklin for her support and assistance while Connolly rose in the business world and obtained her educational degrees. According to Spracklin, Connolly wanted Spracklin to invest some of the money in a stock account for Spracklin’s future. Spracklin explained that the joint tenant format of the account was intended to simplify matters in the event of her untimely death.
Plaintiff Connolly strongly disputed this scenario and claimed that no gift was made and that she held a joint interest in the Merrill Lynch account.
The Merrill Lynch account statements were sent to defendant Spracklin; Spracklin reported all gains and losses from the account on her taxes while Connolly did not list any of the gains or losses on her tax returns. Connolly testified that she was unsure if she listed the Merrill Lynch account as an asset when she later applied for financing for a condominium. This memory lapse is telling since Connolly admitted that obtaining that condominium financing was “tight”; i.e., the type of setting in which a borrower would make sure to list any significant asset. Connolly failed to produce any documents which listed or referred to the Merrill Lynch account as an asset in which she had an interest.
Connolly briefly returned to Massachusetts in August of 1987 on her way to vacation in Germany. At that time, she obtained two thousand dollars from the passbook account (which Spracklin arranged to withdraw). Connolly apparently reviewed the passbook at that time because the passbook contains a notation next to that $2,000 vacation withdrawal, in Connolly’s handwriting, which states “Thanks Gail, I owe you.” The passbook at that time showed a much reduced balance due to Spracklin’s Merrill Lynch withdrawal, numerous withdrawals requested by Connolly for expenses incurred upon moving to Michigan, and withdrawals made by Spracklin to pay joint property expenses. The passbook at that time also contained Spracklin’s notation next to the two Merrill Lynch withdrawals that indicated that the withdrawals represented a gift. Connolly admitted that she saw the passbook and the much reduced balance and said nothing to Spracklin about it.
In the spring of 1988, Spracklin withdrew the remaining $18,000 from the Merrill Lynch account (previously she had withdrawn approximately $4,000 which she gave to Connolly to cover Connolly’s credit card bill and $1,000 for an unspecified purpose). Spracklin, in credible testimony, stated that she withdrew the money to pay for a retaining wall on the couple’s joint property in Maine. She also claimed to have informed Connolly of this withdrawal. The wall was never built because of environmental regulations. Spracklin then transferred the $18,000 to a personal checking account.
Connolly testified she only discovered that the Merrill Lynch account was closed after she permanently returned to Massachusetts in the summer of 1989. In the spring and summer of 1989 the parties’ relationship degenerated due to disputes over the partition of their joint property. They met only once and resorted to lawyers and the courts to work out the property division. Although Connolly made some relatively vague requests for an explanation of where the Merrill Lynch monies had gone, the passbook and Merrill Lynch monies did not become a significant issue until approximately 1991 when, Connolly testified, she had become angered and frustrated by the property division dispute. Connolly filed this suit in July 1992.
C. Rulings of Law
The recitation reflects certain factual findings of the Court which are sufficient to resolve the plaintiffs remaining claims. This Court need not resolve all the factual disputes raised during trial; this was a job the jury performed well. This Court, sitting in equity, must determine if the facts require that a constructive trust be imposed or if an accounting is appropriate. This Court finds that the plaintiff is not entitled to either equitable remedy.
A Court in equity may impose a constructive trust only “in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation ofa fiduciary relation.” Barry v. Covich, 332 Mass. 338, 342 (1955). See Nestrella v. Peck, 403 Mass. 757, 762 (1984).
There is little, if any, evidence that the defendant gained control over the Merrill Lynch or passbook monies “by fraud.” The defendant withdrew the monies from the passbook account with plaintiffs knowledge and often at her specific request. When plaintiff noticed that the passbook balance had diminished from approximately $54,600 in November 1986 to approximately $3,790.00 in the summer of 1987 she raised no objection; rather, she thanked the defendant and stated “I owe you.” Nor does the Court find that the defendant handled the closing of the Merrill Lynch account in a secretive or fraudulent fashion. Any party to a joint account may withdraw all or part of that account. The defendant did withdraw the funds which she thought had been given to her. At most, there was a misunderstanding regarding the extent of Spracklin’s ownership of the Merrill Lynch funds. The Court finds insufficient evidence of any fraudulent intent on the part of Spracklin.
The plaintiff, however, does not claim a constructive trust based upon fraud. Rather, the plaintiff asserts *462 that a constructive trust should be imposed based upon the fiduciary relationship that defendant Spracklin allegedly held as to plaintiff Connolly. In a special verdict, the jury specifically found that Spracklin was not Connolly’s fiduciary. This Court agrees with the jury’s conclusion. Although fiduciary relationships can arise in circumstances “so varied that it would be unwise to attempt the formulation of any comprehensive definition,” a fiduciary relationship exists only when a special degree of confidence is entrusted to another. Warsofsky v. Sherman, 326 Mass. 290, 292 (1950). The mere fact that one has a familial or amicable relationship is insufficient to establish a fiduciary duly. Hill v. Hill, 278 Mass. 44, 51 (1931); Schleifstein v. Greenstein, 9 Mass.App. 344 (1980). Additional factors are needed to establish a fiduciary relationship: for example: “such factors as the relation of the parties prior to the incidents complained of, the plaintiffs business capacity or lack of it contrasted with that of the defendant, and the readiness of the plaintiff to follow the defendant’s guidance in complicated transactions wherein the defendant has specialized knowledge.” Broomfield v. Kosow, 349 Mass. 749, 755 (1965). In this case, the plaintiff has failed to established that the defendant acted as a fiduciary in any fashion. To the contrary, it was the plaintiff who had the significantly greater educational background and much more sophisticated business and financial experience. Indeed, from 1981 through 1986, the plaintiff declared that the defendant was her “employee.” A party who treats someone as a household “employee” for tax purposes is likely to find that an equity Court may be skeptical when the party suddenly claims that the employee served as a fiduciary. Furthermore, the plaintiff plainly was the driving force behind the couple’s business decisions. The defendant’s keeping of the household books was primarily a ministerial act which does not give rise to a fiduciary relationship. Because no fiduciary relationship existed, a constructive trust should not be imposed.
The plaintiffs request for an accounting is also denied. “In order to maintain a bill in equity for an accounting, it must appear from the specific allegations that there was a fiduciary relation between the parties or that the account is so complicated that it cannot conveniently be taken in an action of law.” Ball v. Harrison, 314 Mass. 390, 392 (1943). The passbook account and the Merrill Lynch account are plainly not complicated. In fact, the disposal of the funds from both accounts was detailed — to the best of the parties’ recollections — during the trial. Thus, there is little point to any further accounting. In any event, no fiduciary relationship existed between the parties. Thus, the plaintiff is not entitled to the requested accounting.
Judgment for the defendant shall enter as to the remaining Counts of the Amended Complaint, namely Counts I, IV, V and VIII.