ERIC V. BLEICKEN *vs.* ALICE M. STARK.

No. 02-P-368.

Barnstable. October 17, 2003. - August 17, 2004.

Present: PERRETTA, CYPHER, & DOERFER, JJ.

*Conversion. Bailment. Damages,* Conversion. *Evidence,* Value, Opinion.

This court concluded that, in the circumstances, the defendant bailee had suf-
   ficient knowledge of boxes and their contents which the plaintiff stored in
   the defendant's basement to be liable for the conversion of the plaintiff's
   property, irrespective of any good faith the defendant might have had when
   she intentionally allowed antique dealers to open the boxes to determine
   whether the contents could be sold on consignment [621-622]; further, the
   judge did not abuse his discretion in determining that the plaintiff could
   testify to his opinion about the value of his converted property [622-623],
   and the plaintiff's opinion was not so based on the opinions of the others
   as to preclude his testimony [623-624].

CIVIL ACTION commenced in the Superior Court Department on
June 17, 1999.

The case was heard by *Richard F. Connon,* J.

*Jennifer S.D. Roberts* for the defendant.

*Gregory A. Hession* for the plaintiff.

PERRETTA, J. Sometime in 1992, the plaintiff (Bleicken) stored
certain personal property in the basement of the home of the
defendant (Stark). Some seven years later, when Stark put her
property up for sale, she disposed of many of Bleicken's stored
possessions. Bleicken then brought this action for damages on
the basis of claims of conversion and replevin. A Superior Court
judge found in Bleicken's favor. On appeal, Stark argues that,
as matter of law, she could not convert goods of which she had
no knowledge and that the judge's findings on the issue of dam-

ages were clearly erroneous.[1] Notwithstanding the fact that Bleicken failed to file a notice of appeal, he also claims error in the amount of damages awarded him. Based upon the judge's findings, the law, and Bleicken's failure to file a notice of appeal, we affirm the judgment.

1. *The facts.* We relate the facts as the judge found them to be. The background of the dispute begins sometime in 1987. At that time, Bleicken personally prepared his mother's belongings, including her collection of family antiques, for storage in a commercial storage facility. He put many of her possessions in sealed cardboard cartons and created an inventory as he packed them, identifying the items stored in each carton and the estimated value of the items. In 1991, subsequent to the death of his mother, Bleicken inherited his family's antiques from her.

In the meantime, beginning in 1989, Bleicken and Stark, who resided in the same community and whose daughters had become close friends, struck up their own friendship. In 1992, they entered into an agreement whereby Bleicken agreed to perform carpentry and odd jobs for Stark in exchange for the opportunity to store his belongings in the cellar of her home. With Stark's consent, Bleicken transferred about twenty-eight sealed cartons from the commercial storage facility to her basement. Although Bleicken did not disclose to Stark the nature or value of the property contained in the cartons, Stark was aware of the fact that the cartons contained "things that [Bleicken] had accumulated over the years." From time to time, Bleicken would retrieve various items from the cartons in Stark's cellar. During this time, Bleicken had no understanding with Stark concerning the removal of his belongings from her cellar. Although Stark, in the spring of 1998, did ask Bleicken to remove his belongings from her cellar, she shortly thereafter withdrew her request and told Bleicken that he need not worry about removing his property. There the matter stood until early 1999, when Stark began making arrangements to sell her home.

Although Bleicken and Stark dispute whether Stark provided Bleicken with notice of her intention to sell her home and an opportunity for him to remove his possessions, there is no

---

[1]Stark does not challenge that part of the judgment that orders her to return to Bleicken any of his property in her possession.

dispute that Stark, without prior notice to Bleicken, invited antique dealers to her house to appraise his belongings and that she entered into contracts with certain dealers consigning his property for sale. In at least two of these consignment contracts, Stark certified that she owned the goods in question and was authorized to sell them. Nor does it appear to be disputed in any meaningful way that Stark sold some of Bleicken's property in lot form.

In April, 1999, Stark entered into a purchase and sale agreement for the sale of her house. Relying upon her friendship with Bleicken, Stark asked him if he would read the agreement. While at her house reviewing her agreement, Bleicken went to the cellar and discovered that some of his boxes were empty and others were open. When Bleicken wanted to call the police, Stark became upset, told him not to do so, and disclosed how she had disposed of some of his property.

The judge also found that the arrangement between Bleicken and Stark was mutually beneficial in that Bleicken had the right to store his belongings in Stark's cellar without paying storage fees in exchange for which Stark received Bleicken's services as a carpenter and handyman; that when Bleicken placed his belongings in Stark's cellar, Stark had no idea of the contents of the boxes or their value; that although many of the items given on consignment were returned, many remained missing; and that Stark gained no substantial benefit from the sale of the missing items. Based upon his findings of fact, the judge concluded that Bleicken was entitled to the return of any of his property still within Stark's possession as well as money damages for his belongings that she had converted.

2. *Conversion.* Stark's first argument on appeal is based on the judge's finding that she had no knowledge of the contents of the cartons that Bleicken had placed in her cellar. She claims that as matter of law she cannot be found liable in tort for the conversion of goods about which she had no knowledge.

There is authority for the proposition that a bailee cannot be held liable for harm to property that the bailee did not know or have reason to know was in his possession. See generally *D.A. Schulte, Inc.* v. *North Terminal Garage Co.*, 291 Mass. 251 (1935) (bailee of truck who neither knew nor had reason to

know of its contents not liable for conversion or negligent delivery of contents when truck stolen); *Stuart* v. *D.N. Kelley & Sons*, 331 Mass. 76 (1954) (same, boat in shipyard). Compare *Greenberg* v. *Shoppers' Garage, Inc.*, 329 Mass. 31 (1952) (negligent bailee of automobile who knew that it contained valuable merchandise held liable when its contents were stolen); *King* v. *Motor Mart Garage Co.*, 336 Mass. 422 (1957) (same).

In the instant case, Stark was well aware of the fact that Bleicken had stored cartons of goods in her basement. Indeed, he did so with her permission and with her knowledge that the cartons contained "things he had accumulated over the years." Although Stark might not have had knowledge of each and every item in the boxes at the time they were placed in her cellar, she admittedly allowed antique dealers to open the cartons and go through Bleicken's belongings in her presence for purposes of determining whether the contents were of sufficient value to be sold on consignment. On the facts found, we think Stark had more than sufficient knowledge about the boxes and their contents to hold her liable for the conversion of Bleicken's property irrespective of any good faith she might have had when she intentionally did so. See *Baer* v. *Slater*, 261 Mass. 153, 155 (1927); *Grand Pac. Fin. Corp.* v. *Brauer*, 57 Mass. App. Ct. 407, 412 (2003).[2]

3. *Damages*. Finding no error in the judge's conclusion that Stark was liable for the conversion of Bleicken's property, we turn to her claim that the amount of damages awarded him was based upon incompetent evidence of the fair market value of that property. More specifically, Stark argues that Bleicken was allowed to render his opinions as to the value of the goods notwithstanding the absence of evidence showing his qualifications to do so and that his testimony on this point was based upon the hearsay opinions of others rather than his personal knowledge and judgment.

---

[2] "The elements of conversion require that a defendant be proved to have 'intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . .' *Abington Natl. Bank* v. *Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 507 (1985)." *Grand Pac. Fin. Corp.* v. *Brauer*, 57 Mass. App. Ct. at 412. Where the bailee's acts are intentional, a "sincere and apparently well founded belief that the tortious act was right" does not constitute a defense "even to a gratuitous bailee." *Baer* v. *Slater*, 261 Mass. at 155.

"Whether a witness is qualified to testify as to value is a preliminary question of fact for the trial judge and that finding will not be disturbed on appeal 'unless upon the evidence it [is] [clearly] erroneous as matter of law.' " *Selby Assocs.* v. *Boston Redev. Authy.*, 27 Mass. App. Ct. 1188, 1190 (1989), quoting from *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951).

There was evidence to show that during the years that Bleicken was raised in the family home, he became familiar with the "collection of things" with which he was surrounded and which he had inventoried, stored, and subsequently inherited from his mother. Over the years, he developed an interest in antiques and acquired a hobbyist's knowledge of antique dealing.

Our review of the evidence leads us to conclude that the judge did not abuse his discretion in determining that Bleicken could testify to his opinion about the value of his converted property. See *Menici* v. *Orton Crane & Shovel Co.*, 285 Mass. 499, 503-505 (1934); *Southwick* v. *Massachusetts Turnpike Authy.*, 339 Mass. 666, 668-669 (1959); *Clapp* v. *Haynes*, 11 Mass. App. Ct. 895, 897 (1980). Compare *Rubin* v. *Arlington*, 327 Mass. at 385; *Blais-Porter, Inc.* v. *Simboli*, 402 Mass. 269, 270-273 (1988), wherein it was determined in each case that the evidence failed to show that the judge abused his discretion in finding, as a preliminary matter, that the witness was not qualified to render an opinion as to the value of the property there in dispute.

Stark next argues that even if Bleicken could testify to his opinion of the value of the converted property, his opinion was based upon the inadmissible hearsay opinions of others. Her argument centers on a document prepared by Bleicken which listed more than sixty missing items of his property along with the value of each, for a total of $21,945. In addition to specifying and valuing each unrecovered item, the document included descriptive text concerning the items as well as photographs of the actual or similar items. The list also contained detailed notations concerning those items for which Bleicken had relied on outside sources in formulating his valuation. Those outside sources included antique auction catalogues, an antique pricing guide, an internet source, a 1983 professional appraisal, and

information obtained from a jeweler. Where these sources indicated a range of possible values, Bleicken based his estimate on the median.

Although a property owner's opinion of value cannot be based solely on the opinions of others, see *Maher* v. *Commonwealth*, 291 Mass. 343, 348 (1935); *Downey* v. *Union Trust Co. of Springfield*, 312 Mass. 405, 416-417 (1942), the owner may consider the opinion of others and market information in an effort to inform his own opinion of the value of his property. See *Willey* v. *Cafrella*, 336 Mass. 623, 624-625 (1958). On all the evidence, we cannot say that Bleicken's opinion was so based on the opinions of others as to preclude his testimony. The evidence shows that in formulating his opinion, Bleicken relied in varying degrees upon his personal familiarity with the property, his 1987 valuation of that property, his hobby with and knowledge about antique dealing, and commercial pricing information. Any deficiencies in Bleicken's opinion go to the weight the factfinder gives to it and not to its admissibility. See *Southwick* v. *Massachusetts Turnpike Authy.*, 339 Mass. at 670-671.

That the judge found that the value of the property was less than that to which Bleicken testified does not, as Stark argues, establish that his ultimate determination of the amount of damages due Bleicken was unsupported by the evidence. As stated in *Our Lady of the Sea Corp.* v. *Borges*, 40 Mass. App. Ct. 484, 488 (1996):

> "Under our well established rules of damages, the amount of damages need not be proved with mathematical precision; the extent of damages often must be left to estimate and judgment. See *Dalton* v. *Demos Bros. Gen. Contractors, Inc.*, 334 Mass. 377, 379 (1956). A tortfeasor may not complain that damages cannot be ascertained with precision when his wrongdoing caused the uncertainty. *McKenna* v. *Begin*, 5 Mass. App. Ct. 304, 311 (1977)."

We see no error in the judge's determination of the amount of damages due and owing Bleicken from Stark. See *Agoos Leather Cos.* v. *American & Foreign Ins. Co.*, 342 Mass. 603, 608-609 (1961).

As for Bleicken's contention that the judge's determination

of the amount of damages due him was arbitrary, we need say no more than that his failure to file a notice of appeal from the judgment precludes consideration of his argument. See *Boston Edison Co.* v. *Boston Redev. Authy.,* 374 Mass. 37, 43 n.5 (1977), and cases therein cited; *Kardas* v. *Selectmen of Dedham,* 8 Mass. App. Ct. 184, 187 n.7 (1979). While there is authority for the proposition that compelling circumstances could warrant relief to Bleicken notwithstanding his failure to cross-appeal from the judgment, see *O'Connor* v. *City Manager of Medford,* 7 Mass. App. Ct. 615, 617-619 (1979), he neither argues that such circumstances exist nor do we find any on the record before us.

We, therefore, do not consider his argument attacking the judge's determination of the amount of damages due him from Stark.

*Judgment affirmed.*