In re Edwin A. McCABE, Debtor.

Joseph Braunstein, Chapter 7 Trustee of Edwin A. McCabe, Plaintiff,

v.

George Panagiotou and Gedco, LLC, Defendants.

Civil Action No. 05–12208–NMG.

United States District Court, D. Massachusetts.

June 27, 2006.

Christopher Michael Condon, Craig J. Ziady, Riemer & Braunstein LLP, Boston, MA, for Plaintiff.

Evan Slavitt, Joseph S. Bodoff, Bodoff & Slavitt, LLP, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

Pending before the Court are cross-motions for summary judgment in an adversary proceeding with respect to which the Court has allowed withdrawal of the reference to the bankruptcy court.

### I. *Background*

On September 3, 2003, Attorney Edwin A. McCabe ("the Debtor" or "McCabe") filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Massachusetts under Chapter 11 of the Bankruptcy Code. Listed among the Debtor's property was a 50% interest in one of the defendants, GEDCO, LLC ("GEDCO"). The Debtor's Chapter 11 reorganization was converted to a Chapter 7 liquidation on February 16, 2005, and the plaintiff, Joseph Braunstein ("the Trustee"), was appointed trustee. Defendant George Panagiotou ("Panagiotou") is the Debtor's former business partner in GEDCO.

During the 1990s, McCabe was retained as counsel by Panagiotou and recommended that Panagiotou purchase a claim in a bankruptcy proceeding against Robert

and Bernadine Erkins ("the Erkins Claim") as a business investment.[1] In 1998, Panagiotou and McCabe agreed that, as compensation to McCabe for engineering the deal, Panagiotou would assign to him a portion of the net proceeds of the recovery, i.e., after deducting the purchase price of the claim and all legal fees associated therewith. The agreement further provided that if the Erkins Claim were not liquidated, the property received would be sold in a commercially reasonable manner.

Panagiotou alleges that although both he and McCabe believed that the Erkins Claim would result in a monetary recovery, the judgment, in fact, yielded possession of real property in Idaho ("the Idaho Properties") the disposition of which was hindered by the necessity of a marshal's sale and litigation by the Erkins to regain title. Consequently, the amount of time and money necessary to liquidate the Erkins Claim increased well beyond what either Panagiotou or McCabe had contemplated.

In 2001, GEDCO was formed as a Delaware limited liability company ("LLC") for the purpose of holding the Idaho Properties. GEDCO had two equal members, McCabe and Panagiotou, with the capital contribution of each member being his interest in the Erkins Claim.

The GEDCO LLC agreement requires the members' unanimous written consent 1) to transfer a member's interest in the LLC, 2) to transfer any GEDCO assets or 3) to change, modify or amend the LLC agreement. A member may contribute additional capital to GEDCO if agreed to by the other members in which event the revised contribution amounts are to be reflected in an amended agreement. The agreement prohibits members from receiving distributions of property other than cash in return for their capital contributions.

The Idaho Properties did not come into GEDCO's possession until 2003. On or around February 14, 2003, McCabe confirmed by letter to Panagiotou that, in anticipation of Panagiotou's contribution of additional capital to GEDCO:

1) McCabe would "be liable for one-half of those sums as capital contributions to the LLC, pursuant to paragraph [2(a)] of the [GEDCO LLC agreement]",

2) Panagiotou would "treat such deferred contribution(s) on [McCabe's] part as such",

3) McCabe's "interest in the LLC [would] be subject to a lien in [Panagiotou's] favor in the amount of such capital contribution(s)" unless and until McCabe made equivalent contributions, and

4) "for so long as [Panagiotou] retain[ed] such liens, [Panagiotou would] be entitled to exercise all of the rights of ownership of [McCabe's] interest in the LLC as if [Panagiotou] were the absolute owner of that interest".

In April, 2003, Panagiotou and McCabe formed two affiliated limited liability companies, Bliss Valley Properties, LLC ("Bliss Valley") and Devil's Corral, LLC ("Devil's Corral"), each of which held one of the Idaho Properties and was, in turn, wholly owned by GEDCO. Between 2003 and the present, Panagiotou has apparently contributed significant amounts of his own money to fund the operations of GEDCO, Bliss Valley and Devil's Corral, and to maintain the Idaho Properties, while

---

1. Although certain activities relating to this case were conducted by Panagiotou's spouse or his company, Pana–Tek, those distinctions are not material. To simplify, therefore, all such activities will be ascribed to Panagiotou.

McCabe has made very limited, if any, personal contributions.

In or around October, 2004, Panagiotou apparently undertook to amend unilaterally the GEDCO LLC agreement by reducing the Debtor's interest to 5% and increasing his own interest to 95%. At about the same time, Panagiotou also undertook to reduce GEDCO's interest in Bliss Valley and Devil's Corral from 100% to 5% and to increase his own interest in those LLCs from 0% to 95%. Panagiotou maintains that those reallocations of membership interests were in accordance with the terms of the GEDCO LLC agreement whereby additional capital contributions were to be reflected in amendments to that agreement. Although McCabe does not dispute that Panagiotou made personal capital contributions into GEDCO and/or the affiliated limited liability companies, he asserts that he never assented to amendments formally reallocating the membership interests in those LLCs.

In March and December, 2004, and January, 2005, Panagiotou purportedly established three lines of credit which were secured by mortgages of the Idaho Properties. He is alleged to have used certain proceeds from those lines of credit to pay personal expenses unrelated to the maintenance of the Idaho Properties. The gist of plaintiff's complaint is that defendant's reallocation of interests in GEDCO and affiliated companies, and his use of credit obtained on the basis of assets held by those companies, constituted various statutory and common law violations.

## II. Cross–Motions for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-movant and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-movant's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Plaintiff's Motion for Partial Summary Judgment

The Trustee asserts that he is entitled to partial summary judgment on Count I of the complaint which alleges that Panagiotou willfully violated the automatic stay imposed by 11 U.S.C. § 362. More specifically, the Trustee contends that Panagiotou's post-petition conduct constituted one or more of the following prohibitions of the Bankruptcy Code:

(3) any act to obtain possession of property of the estate or of property

from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . .

11 U.S.C. §§ 362(a)(3)-(a)(6). The Trustee requests that, if the Court concludes that Panagiotou violated the automatic stay by restructuring the affiliated limited liability companies, it declare such restructuring null and void *ab initio*.

Panagiotou does not dispute that he realigned the membership interests in the LLCs but he challenges the characterization of those alterations as unlawful. In particular, he contends that his conduct did not transgress the automatic stay because 1) no "property" of the Debtor's estate was affected and 2) Panagiotou's actions were "purely ministerial".

With respect to the former contention, Panagiotou asserts that the reallocation of interests merely formalized the preexisting status of his and McCabe's relative capital contributions to GEDCO. The interests in the LLCs were altered not by the written documentation of the restructuring, says Panagiotou, but rather by the substantive realignment that occurred when Panagiotou, but not McCabe, contributed additional capital to the LLCs. Panagiotou insists that his additional contributions were agreed to by McCabe, as is required by the GEDCO LLC agreement, and that the revisions made were "automatic and mandatory". Relative to that contention, Pan-agiotou avers that the acts complained of were merely "ministerial" because they were essentially clerical documentation of the substantive change in interests that had occurred in accordance with the terms of the GEDCO LLC agreement.

In response, the Trustee asserts that Panagiotou mischaracterizes the nature of "property" protected by the automatic stay provision. Without discussing whether the Debtor possesses a tangible interest in the assets of GEDCO, the Trustee contends that the Debtor, nevertheless, has an intangible interest in that company by virtue of his 50% membership status. See Mass. Gen. Laws ch. 156C, § 38 ("A limited liability company interest is personal property."); Del. 6 Del.Code Ann. tit. 6, § 18-701 (same); Idaho Code Ann. § 53-635 (same); 11 U.S.C. § 541(a) (including within a bankrupt debtor's estate, with limited exceptions not pertinent here, "all legal or equitable interests of the debtor . . . as of the commencement of the case").

Notwithstanding the evidence that 1) Panagiotou's capital contributions to GEDCO exceeded McCabe's and 2) McCabe conditionally empowered Panagiotou (six months prior to the bankruptcy filing) to "exercise all of the rights of ownership of my interest in [GEDCO] as if you were the absolute owner of that interest", the Court concludes that Panagiotou's attempt to amend the LLC agreements was in violation of the automatic stay. If McCabe lacked a property interest in GEDCO, or if the stay seriously threatened Panagiotou's own interest in the LLCs and the Idaho Properties, the appropriate action of Panagiotou was to move the bankruptcy court for relief from the stay, not to engage in self-help. *See* 11 U.S.C. § 362(d) (specifying grounds for court-ordered relief from an automatic stay).

First, because Panagiotou provides no evidence to justify the particular reallocation of interests, the Court cannot conclude that such reallocation did not infringe upon the property interest of the Debtor's estate. Even assuming, *arguendo,* that the Debtor lacks an equitable interest in GEDCO, the Court cannot conclude that his legal interest was unaffected by Panagiotou's conduct.

Second, Panagiotou's efforts to reallocate the membership interests in GEDCO were not in accordance with that LLC agreement because the amendment was not "duly executed by all of the Members" as required. Panagiotou correctly states that the members are mandated to amend the agreement to reflect additional capital contributions to which they assent. That obligation, however, does not render amendment "automatic" as Panagiotou contends.

Furthermore, the February, 2003, communication of McCabe, in which he empowered Panagiotou to exercise McCabe's ownership rights, does not abrogate Panagiotou's violation of the stay. That authorization was dependent upon a lien in favor of Panagiotou. Thus, to the extent that Panagiotou has relied upon McCabe's letter to justify amending the GEDCO LLC agreement, he has violated the automatic stay provision prohibiting acts to enforce a lien.

In a late-filed opposition to plaintiff's motion for summary judgment, defendants offer two additional grounds in support of their position and move to strike one paragraph from the Trustee's statement of facts. Although, on this occasion, the Court will allow, and has considered, the late opposition and motion to strike, its conclusion is unaltered by the arguments presented therein.

█ First, although it may be true that the Trustee failed to prove that defendants' violation of the automatic stay was willful, there was a violation nevertheless. Willfulness is relevant only with respect to the appropriate remedy for violation of the stay, not with respect to the violation itself. *See* 11 U.S.C. § 362(k). Because the Court declines, in any event, to impose such a remedy, the issue of willfulness will not be considered.

█ Second, even if the Bankruptcy Court denied the Trustee's earlier motion for summary judgment, which is not entirely clear, that ruling does not foreclose this Court from considering the merits of the pending motion. The law of the case is a "prudential principle" that does not prevent a court from "reopen[ing an issue] if it is warranted by the circumstances of the case". *Field v. Mans,* 157 F.3d 35, 40 (1st Cir.1998). Given the absence of a written decision by the Bankruptcy Court explaining its reasons for denying plaintiff's motion (if, in fact, it did), this Court will consider the present motion on the merits.

In their motion to strike, defendants challenge the Trustee's statement, citing "Counsel Aff., at Exhibit 'G'", that

> Mr. Panagiotou's counsel, J. Robert Alexander, expressly advised Mr. Panagiotou that the Debtor's signature was necessary for the revisions to the LLCs to be effective.

Exhibit G, which documents changes made by Panagiotou's counsel to the LLC agreements, states "[y]ou will note that Ed [the Debtor] needs to sign the documents". That statement speaks for itself and, while elaborated upon by plaintiff's statement of facts, has not been patently misrepresented.

### C.   *Defendants' Motion for Summary Judgment*

Defendants assert that they are entitled to summary judgment on seven of

nine claims asserted by the Trustee. They do not seek summary judgment on plaintiff's claim for a declaration that the Trustee is a 50% owner/shareholder of GEDCO and that GEDCO is the sole member of the Bliss Valley and Devil's Corral LLCs nor do they seek summary judgment with respect to their counter-claims for reformation, declaratory judgment and constructive trust. Because the Court has determined that Panagiotou violated the automatic stay, it will deny Panagiotou's motion for summary judgment on that claim. The other claims are addressed *seriatim*, beginning with those deriving from the Bankruptcy Code then proceeding to the common law counts.

### 1. *Turnover of Property* (against both defendants)

■ Title 11 of the U.S.Code, § 542 requires "any entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease" to turn that property over to the estate unless it is of "inconsequential value or benefit to the estate".

Defendants contend that they are entitled to summary judgment on the turnover claim on the ground that the Debtor's estate lacks a property interest subject to turnover. Furthermore, defendants assert that the turnover claim lies only against Panagiotou, not GEDCO, because GEDCO cannot possibly possess, control or have custody of an ownership interest in itself.

The Trustee responds that the Debtor's "personal property" interest in GEDCO satisfies the property requirement of § 542. In an obscure footnote, he disputes the contention that GEDCO should be entitled to judgment on the turnover claim on the ground that GEDCO was somehow a knowing participant in Panagiotou's conduct.

■ The Court will deny defendants' motion for summary judgment on the turnover count. Because an interest in a limited liability company is considered personal property under the laws of Massachusetts, Delaware and Idaho (three states with connections to this matter), it is arguably property that a trustee may use or sell. Defendants' argument is more persuasive with respect to GEDCO but in consideration of the standard of review on summary judgment, the Court declines to enter judgment in GEDCO's favor. Even if the Debtor's interest in GEDCO is limited to his intangible membership share in that company, it is conceivable that GEDCO may be deemed to possess that interest.

### 2. *Avoidance of Postpetition Transfers* (against Panagiotou)

■ Plaintiff's complaint seeks to avoid and recover unauthorized post-petition transfers of the Debtor's property pursuant to 11 U.S.C. §§ 549(a)(1) and 549(a)(2)(B). Panagiotou contends that he is entitled to summary judgment on that count for the same reason he denies liability for turnover, namely that there is no "property of the estate" at issue. Because an interest in a limited liability company is defined as personal property under state law, the Court will deny Panagiotou's motion for summary judgment on the avoidance and recovery claim.

### 3. *Conversion* (against Panagiotou)

■ Under Massachusetts law, a defendant is liable for conversion where he "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time". *Bleicken v. Stark*, 61 Mass.App.Ct. 619, 813 N.E.2d 572, 576 n. 2 (2004) (quoting *Abington Nat'l Bank v. Ashwood Homes, Inc.*, 19 Mass.App.Ct. 503, 475 N.E.2d 1230, 1233

(1985)) (internal quotation marks omitted).[2] Consistent with his position with respect to other claims, Panagiotou contends that he is entitled to summary judgment on the conversion claim on the ground that the Debtor's interest in GEDCO is not personal property. For the reason set forth above, that argument is unpersuasive. Moreover, whether Panagiotou intentionally or wrongfully interfered with the Debtor's personal property is a dispute that should be resolved at trial.

### 4. *Unjust Enrichment* (against Panagiotou)

■■■■ A claim for unjust enrichment under Massachusetts law requires proof of "unjust enrichment of one party and unjust detriment to the other party". *Mass. Eye & Ear Infirmary v. QLT Photothera-peutics, Inc.*, 412 F.3d 215, 234 n. 7 (1st Cir.2005) (quoting *Bushkin Assocs., Inc. v. Raytheon Co.*, 906 F.2d 11, 15 (1st Cir. 1990)) (internal quotation marks omitted). More specifically, a plaintiff must show

> (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law.

*Massachusetts v. Mylan Labs.*, 357 F.Supp.2d 314, 324 (D.Mass.2005) (citation omitted). The purpose of a cause of action for unjust enrichment is to "provide[ ] an equitable stopgap for occasional inadequacies in contractual remedies at law". *Mass. Eye & Ear Infirmary*, 412 F.3d at 234. Thus, it may be maintained as a cause of action where available legal remedies do not "cover[ ] the entire case made by the bill in equity". *Mylan Labs.*, 357 F.Supp.2d at 324 (quoting *Hillsborough*

*Twp., Somerset County v. Cromwell*, 326 U.S. 620, 629, 66 S.Ct. 445, 90 L.Ed. 358 (1946)) (internal quotation marks omitted). Where the relationship of the parties is governed by contract, "the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies". *In re Lupron Mktg. & Sales Practices Litig.*, 295 F.Supp.2d 148, 182 (D.Mass. 2003) (citation omitted).

■■■ Here, Panagiotou contends that the Trustee has failed to state a claim for unjust enrichment because 1) plaintiff has ample and adequate remedies at law and 2) plaintiff's allegations do not demonstrate the occurrence of any unjust enrichment. Without addressing Panagiotou's position that no misconduct occurred, the Court concludes that he is entitled to summary judgment on the unjust enrichment claim because plaintiff has adequate remedies at law.

The allegations of the complaint in support of plaintiff's unjust enrichment claim involve 1) Panagiotou's reallocation of ownership interests in the LLCs and 2) Panagiotou's establishment of three lines of credit secured by the Idaho Properties. In both cases, defendants' alleged liability derives from their express and implied contractual obligations to the Debtor and statutory requirements imposed by the Bankruptcy Code. Consequently, despite plaintiff's argument to the contrary, the Court concludes that his claims for violation of the stay, declaratory judgment, turnover, avoidance and recovery, conversion, and breach of fiduciary duty render complete relief available for the alleged misconduct. *Cf. In re Lupron*, 295 F.Supp.2d at 182 (dismissing plaintiffs' un-

---

**2.** The parties do not dispute the applicability of Massachusetts law to plaintiff's common

law claims.

just enrichment claim where the federal RICO statute provided sufficient relief).

### 5. *Accounting* (against both defendants)

■ Defendants seek summary judgment on plaintiff's accounting claim against GEDCO, asserting that there is no basis for that defendant's liability to account. The existence of a fiduciary relationship is a prerequisite for an equitable accounting claim under Massachusetts law. *Chedd–Angier Prod. Co., Inc. v. Omni Publ'ns Int'l, Ltd.,* 756 F.2d 930, 937 (1st Cir.1985) (citing *Ball v. Harrison,* 314 Mass. 390, 50 N.E.2d 31 (1943)). Where the claims asserted are legal in nature and a duty to account does not arise as an equitable matter, an accounting cause of action lies only where the accounts of the parties are "of such a 'complicated nature' that only a court of equity can satisfactorily unravel them". *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (quoting *Kirby v. Lake Shore & M.S.R. Co.,* 120 U.S. 130, 134, 7 S.Ct. 430, 30 L.Ed. 569 (1887)).

■ Here, defendants do not deny that Panagiotou owes fiduciary obligations to McCabe but they dispute the notion that GEDCO has similar duties or that plaintiff is entitled to an equitable accounting given the adequacy of available legal remedies. Consistent with his position on the unjust enrichment claim, the Trustee contends that the adequacy of the legal remedies it seeks is unclear and that Panagiotou's apparent commingling of personal and GEDCO assets makes an accounting appropriate. In addition, the Trustee points out that his statutory turnover claim includes a requirement that the liable party "account for" the property to be turned over. *See* 11 U.S.C. § 542(a).

The Court will allow defendants' motion for summary judgment on the accounting claim with respect to GEDCO. Although the record sustains an accounting claim against Panagiotou, it does not warrant an equitable accounting claim against GEDCO. The Trustee has provided no evidence that GEDCO, as a company, owes a fiduciary duty to McCabe. To the extent that GEDCO has a duty to account to McCabe, that duty appears to be derivative of Panagiotou's obligation. Moreover, because GEDCO remains a defendant on plaintiff's turnover claim, it may be required to account if found liable thereunder.

### 6. *Breach of Fiduciary Duty* (against Panagiotou)

Relying on the contentions set forth in opposition to the other claims against him, Panagiotou requests that the Court grant summary judgment to him on the breach of fiduciary duty claim. The Court will deny that request.

### 7. *Preliminary Injunction* (against both defendants)

As defendants note, the Trustee's motion for interim injunctive relief has been considered and ruled upon by the Court. The Court's order has rendered moot, therefore, any further claim for summary judgment, or judgment at trial, of preliminary injunctive relief.

### ORDER

In accordance with the foregoing memorandum:

1) the Trustee's Motion for Partial Summary Judgment (Docket No. 33) is **ALLOWED,** defendants' reallocation of membership interests in the LLCs is hereby declared null and void and defendants are enjoined from any further conduct in violation of the automatic stay;

2) Defendants' Motion for Summary Judgment (Docket No. 40) is, with respect to the unjust enrichment claim against Panagiotou, the equitable accounting claim against GEDCO and plaintiff's request for temporary injunctive relief, **ALLOWED**, but, in all other respects, is **DENIED;**

3) Defendants' Motion to Strike Paragraph 22 of Trustee's Statement of Relevant Facts (Docket No. 56) is **DENIED;** and

4) the Trustee's Motion to Strike Defendants' Late–Filed Summary Judgment Opposition (Docket No. 58) is **DENIED.**

So ordered.