Murphy, Ernest B., J.
In 1999, defendant MHPG, Inc. (hereinafter, “MHPG”) entered into a lease of manufacturing equipment with General Electric Capital Corporation (hereinafter, “GE”). In 2001 and 2002, MHPG defaulted on the lease to GE. The following year, MHPG ceased all business operations. Subsequently, in 2003, GE brought the present action against the defendants. In its second amended complaint, GE alleges: (1) breach of contract; (2) breach of corporate guaranty; (3) a claim for account stated; (4) successor and alter ego liability, or liability flowing from a “piercing of the corporate veil”; (5) conversion; (6) breach of bailment; (7) negligence; (8) unjust enrichment; (9) aiding and abetting conversion; (10) unfair and decep *396 tive business practices in violation of G.L.c. 93A; and (11) an action for replevin. GE now moves this Court for partial summaiy judgment.[2] The defendants additionally move for summary judgment against GE. Furthermore, defendants Scott London (hereinafter, “London”) and Keith Miller (hereinafter, “Miller”) bring counterclaims against GE alleging abuse of process and unfair and deceptive business practices in violation of G.L.c. 93A. London and Miller move this Court to grant summary judgment in favor of their counterclaims; GE opposes their motion and moves this Court to grant summaiy judgment in its favor on the counterclaims.
After a hearing on the motions, and for the following reasons, the plaintiffs motion for summaiy judgment is DENIED. The defendants’ motions for summaiy judgment on the plaintiffs claims are ALLOWED. Furthermore, London and Miller’s motions for summaiy judgment on their counterclaims are ALLOWED, as to liability.

FINDINGS OF FACT

The following facts are either undisputed or are taken in the light most favorable to the non-moving parties.
I. The Corporations
GE is a Delaware Corporation which, relevant to this action, leased manufacturing equipment to MHPG.
MHPG,' formed in 1984, and MHPG NY, Inc. were close corporations engaged in the business of t-shirt manufacturing. MHPG held annual meetings' and maintained corporate records. In 1999, at the time the lease was entered into, MHPG conducted sales and printing from Whitinsville, Massachusetts. At that time, defendants David Hurowitz (hereinafter, “Hurowitz”), Barbara Kupfer (hereinafter, “Kupfer”), London, and Miller were the sole stockholders and directors of MHPG. Kupfer held 7% of outstanding shares, and the remaining three shareholders each held 31%. In December of 1999, following a dispute among the shareholders, London and Miller left the corporation and sold their interests to Hurowitz and Kupfer: Kupfer gained an 18% ownership stake, and Hurowitz’s interest grew to 82%. Subsequently, in July of 2000, Kupfer left MHPG, leaving Hurowitz as sole shareholder.[3] The following month, MHPG closed its manufacturing operations in Massachusetts and relocated its manufacturing, and the leased equipment, to plants in South Carolina and Mexico. MHPG maintained an office at 6 Brussels Street in Worcester, which was sublet from Image Apparel, Inc. In 2001, MHPG underwent financial difficulties, and stopped making payments under the lease in July 2002. Later in that year, MHPG went out of business.
Chillybear, Inc. (hereinafter, “Chillybear”) is a Sub-chapter S corporation located in Needham, Massachusetts. Chillybear maintains corporate records. Chillybear was founded in 1988 by sole shareholder Ted Pidcock (hereinafter, “Pidcock"). The corporation is a custom printing business, engaging in the business or production of: screen printing, embroidery, mugs, keychains, pens, and apparel.
Image Apparel, Inc. (hereinafter, “Image”) is a Massachusetts corporation engaged in the business of custom screen-printing. Image holds annual meetings and maintains corporate records. From 1997 through 2000, Image was owned and operated by David Amato. In 2000, Kupfer acquired a 50% interest in Image. At the time Kupfer acquired an ownership interest, Image was located at 66 Ellsworth Street in Worcester. Subsequently, in 2000, Image relocated to 6 Brussels Street. In 2001, Image filed for bankruptcy. Pidcock, in October 2002, rescued Image from bankruptcy and acquired a 75% interest in the corporation. Kupfer remained as a shareholder, but her interest dropped to 25%. Image sublet a separate space at 6 Brussels Street to MHPG following MHPG’s termination of manufacturing activities in Massachusetts.
II. Factual Background
Following the unanimous consent of the Directors, on April 21, 1999, MHPG entered into a contract to lease manufacturing equipment from GE. Under the lease, GE provided equipment described in five Schedules, and was paid in monthly installments. The equipment was delivered to MHPG at its Whitinsville plant in July 1999. In the summer of 2000, MHPG unilaterally moved all of the leased equipment to other plants: the equipment described in Schedule 3 was sent to South Carolina; all of the remaining equipment was sent to Mexico. When MHPG notified GE of the move, GE sent a letter noting that the movement constituted an “event of default” under the contract. Nevertheless, GE did not declare the lease in default at that time. Rather, GE requested and received a list of the locations of the equipment and authority to enter the various premises to inspect the equipment. MHPG continued to make monthly payments, which GE received, until shortly before MHPG’s ultimate dissolution.
In the early months of 2002, as MHPG’s financial situation grew increasingly distressed, MHPG attempted to enter into agreements with other companies whereby those companies would replace MHPG on the lease of equipment. Hurowitz contacted the Royal Avalon Company seeking to assign equipment from Mexico. Ultimately, this attempt failed, and GE eventually sold that equipment to Mid Atlantic Screen Print, Inc. for $200,000. Hurowitz also contacted Kupfer in an attempt to have Image become an assignee of the equipment described in Schedule 3. Kupfer agreed and made two payments, from her personal funds, to GE. Image subsequently made a third half-payment, but after not receiving the equipment, all payments to GE on behalf of the Schedule 3 equipment were terminated. GE then recommenced its prior practice of *397 billing MHPG. There was no formal or written reassignment of the lease, as required under the contract. Following the commencement of this suit, GE located the Schedule 3 Equipment in South Carolina. GE alleges that the equipment was severely damaged and in an inoperable condition.
Prior to the consummation of the lease, GE undertook a financial investigation of MHPG. The investigation, which included an audit of MHPG and MHPG NY, Inc., revealed the following: $14,793,006 in assets at year end of 1999; $14,098,231 in liabilities atyear end of 1999; retained earnings of $1,566,988 at year end of 1999; shareholder advances of $372,000 on record in 1999; and, an equity of $1,855,334 for the year of 1998. In preparation for this trial, GE deposed defendant Paul J. DeCristofaro (hereinafter, “DeCristofaro”), Chief Financial Officer of MHPG in the relevant periods. In his deposition, DeCristofaro stated that the value of MHPG’s shares in 1999 and 2000 was “zero.”[4] This Court finds no evidence that DeCristofaro brought his assessment of MHPG’s financial situation to the attention of the directors. There was no evidence that the directors of MHPG, at the time the lease was signed, were aware of DeCristofaro’s beliefs concerning the financial status of MHPG.
III. Procedural History
On April 28, 2003, GE filed the present action against all defendants except DeCristofaro. In its original complaint, GE alleged six causes of action: breach of contract and breach of corporate guaranty as against MHPG and MHPG NY, Inc.; breach of individual guaranty as against the named individual defendants; conversion against all defendants; unjust enrichment against all defendants; and an action for replevin against all defendants. Early in the course of discovery, GE determined that the named individual defendants had not executed personal guaranties for the contract. Thereafter, GE entered a second amended complaint expanding its claims to include claims for “piercing the corporate veil,” and including DeCristofaro as a named defendant.
Defendant London and Miller filed counterclaims, stating causes of action for abuse of process and for unfair and deceptive business practices in violation of G.L.c. 93A.

CONCLUSIONS OF LAW

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. The nonmoving party cannot defeat a motion for summary judgment by resting on his pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Cmty. Nat’l Bank, 369 Mass. at 553.

I. Piercing the Corporate Veil

A. Alter Ego Liability

GE first argues that the defendants are liable under the lease because MHPG was a so-called “sham” corporation.
“(C)orporations are generally to be regarded as separate from each other and from their respective stockholders . . . where there is no occasion ‘to look beyond the corporate form for the purpose of defeating fraud or wrong, or for the remedying of injuries'.’ ” My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618 (1968) (citation omitted). A court may do so, however, when (a) there is an exercise of pervasive control in the activities of the “related business entities by the same controlling person! ] and there is a fraudulent or injurious consequence by reason of the relationship among those business entities,” or (b) “there is a confused intermingling of activity of two or more [entities] engaged in a common enterprise with substantial disregard of the separate nature of the [business] entities, or serious ambiguity about the manner and capacity in which the various [business entities] and their respective representatives are acting.” Evans v. Multicon Constr. Corp., 30 Mass.App.Ct. 728, 732-33 (1991).
Massachusetts courts consider twelve factors in deciding “whether to penetrate the corporate form: (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.” Id. at 733.
The first factor in examining corporate form is that of common ownership of corporations, relevant here *398 to unity between MHPG and Image or Chillybear.[5] Here, there is absolutely no evidence of common ownership between MHPG and Chillybear. Furthermore, to the extent that there is a similar shareholder for MHPG and Image, Kupfer was a minority shareholder in both corporations at the times relevant to this action.
The second factor is pervasive control. Here, by mere virtue of their roles as directors and dominant shareholders in a close corporation, Hurowitz, London, and Miller enjoyed pervasive control over MHPG at the time the lease was signed. The remaining defendants, however, did not have pervasive control over MHPG. In addition, by the time MHPG defaulted on the lease, only Hurowitz maintained pervasive control.
The presence of confused intermingling of personal assets is the center of the third examination. GE argues that Kupfer’s assets were intermingled with MHPG when she took goods-in-kind rather than cash to resolve her ownership interest when she left the corporation.[6] In addition, GE suggests that Hurowitz infused MHPG with immense personal assets over the life of the corporation. In both cases, however, GE has not offered evidence that specific individuals disregarded corporate assets - thereby intermingling their personal funds with corporate assets. Hurowitz did place personal assets at the disposal of MHPG, but he did not remove funds for his own personal use. Similarly, although Kupfer did take assets when she left the corporation, GE has raised no evidence that the assets removed were inconsistent with a fair appraisal of the value of her interest in the corporation.[7]
The next factor under Evans is whether the “illusoiy” corporation was adequately capitalized. At the time the lease was signed, the audit revealed: an equity of $694,775 atyear end of 1999; shareholder advances of $372,000 on record in 1999; and, an equity of $1,855,334 for the year of 1998.
The fifth and sixth factors concern whether MHPG observed proper corporate formalities and kept corporate records. The defendants present evidence that MHPG observed directors’ meetings, annual shareholder meetings, retained professionals for financial and legal advice, and maintained records and minutes. The evidence suggests that notwithstanding GE’s contentions otherwise, MHPG kept corporate records and observed proper corporate formalities.
The seventh and eighth factors examine payment of dividends and solvency. Neither party suggests that MHPG did not pay dividends. As to insolvency at the time the lease was entered into, the audit revealed an equity of $694,775 at year end of 1999.
The next three factors are whether the dominant shareholders siphoned away corporate assets, whether there were nonfunctioning officers and directors, and whether the dominant shareholders used the corporation for transactions for their own benefit. Here, GE has not argued that any of these circumstances occurred, nor would the record support such contentions.
The final factor to examine is whether MHPG was used to promote fraud. Here, there is simply no such evidence that the shareholders established a three-year plan to defraud GE of leased equipment after making payments on the lease for over two years. There is additionally no evidence that any of the shareholders benefitted from the ultimate failure of MHPG, and not insignificant evidence that some of the shareholders suffered substantial personal financial loss as shareholders of MHPG.
The over-all structure and operation of MHPG do not suggest to this Court that the corporation was an “alter ego” for any of the defendants. There is simply insufficient evidence to believe that MHPG was used to further the personal desires of the defendants; rather, MHPG existed as a separate corporate entiiy. Therefore, this Court will not “pierce the corporate veil” so as to impose liability on the defendants for the actions of MHPG.
B. Successor Liability
In the alternative, GE argues that Image and Chillybear are liable under the lease as successor corporations. Massachusetts courts do not impose liabilities of a selling predecessor corporation on a successor corporation unless “(1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.” Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 359 (1997) (citations omitted). The Supreme Judicial Court has stated:
The factors that courts generally consider in determining whether to characterize an asset sale as a de facto merger are whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary'for the uninterrupted continuation of normal business operations of the seller corporation.
Id. at 359-60 (citations omitted). As a threshold issue, there is no evidence that an asset sale took place whereby Chillybear or Image purchased the assets of MHPG. Therefore, successor liability is not an appropriate theory under the facts of this case. Nevertheless, *399 the Court will examine defendants Chillybear and Image under the Cargill analysis as follows.
None of the four factors are applicable to Chillybear. There was no continuation of enterprise as between MHPG and Chillybear: management, personnel, physical location, assets, and general business operations were distinct as between the two corporations. Furthermore, there were no overlapping shareholders between the two companies. Moreover, the third factor, which examines the dissolution of the selling corporate entity following the sale of assets, is inapplicable as there was no sale of assets in this case. Finally, Chillybear undertook no obligations of MHPG. Therefore, Chillybear is not liable as a successor corporation.
Although, compared to the absolute paucity of unity between Chillybear and MHPG, Image more closely resembles a successor corporation, the factors still do not support a finding sufficient for liability. First, there is some commonality between MHPG and Image. Following the close of the MHPG Whitinsville plant, MHPG sublet a space from Image. In addition, Kupfer changed employment from MHPG to Image.[8] Nevertheless, Image has not engaged in a continuation of business of MHPG: Image maintained its own pre-existing business with its own pre-existing assets. Second, there is also an overlap between shareholders of the company. When Kupfer left her interest with MHPG, she attained a 50% interest with Image. Again, however, this factor does not support a finding of successor liability: Kupfer was a minority shareholder with MHPG and, at the time of the eventual failure of MHPG, a minority shareholder of Image. In addition, as stated above, the third factor is inapplicable as there was no sale of assets between MHPG and Image. Finally, although Image and Kupfer did make two and one-half payments under Schedule 3 of the lease to GE, this factor again does not support a finding of successor liability. Image, as a separately operating corporation, did not need to support any obligations of MHPG. In addition, the proposed reassignment of the lease never occurred and Image never received the Schedule 3 equipment. Furthermore, Image did not engage in the preferential treatment that was indicative of satisfaction of this factor in Cargill Cargill Inc., 424 Mass. at 362. Therefore, this Court cannot find that Image was a successor corporation of MHPG.[9]

II. Unlawful Exercise of Personal Dominion

Both in conjunction with its claims for imposing personal and successor liability, and separately, GE next argues that the defendants are liable for negligence, improper bailment, conversion, aiding and abetting conversion, unjust enrichment, and replevin. To satisfy its burden of proof in all of these claims, GE must demonstrate (1) personal action by the defendants and/or (2) an unlawful exercise of personal dominion. See G.L.c. 247, §7 (“If goods exceeding twenty dollars in value are unlawfully taken or detained from the owner or person entitled to their possession, or if goods of that value, which have been attached on mesne process or taken on execution, are claimed by a person other than the defendant in the action in which they have been so attached or taken, the owner or such other person may cause them to be replevied”); Lyon v. Morphew, 424 Mass. 828, 831-32 (1997) (“The defendants may not be held individually liable for any breach of a duty which their employer [ ] may have owed to the plaintiff. Employees are liable for torts in which they personally participated”); King v. Trs. of Boston Univ., 420 Mass. 52, 59 (1995) (“A bailment is established by ‘delivery of personalty for some particular purpose, or on mere deposit, upon a contact, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be’ ” (citation omitted)); Sutton v. Valois, 66 Mass.App.Ct. 258, 265 (2006) (“A determination that a party would be unjustly enriched ‘requirels], generally, . . . that [the] party [would] hold property under such circumstances that in equity and good conscience he ought not retain it’ ” (citation omitted)); Bleicken v. Stark, 61 Mass.App.Ct. 619, 622 n.2 (2004) (“The elements of conversion require that a defendant be proved to have ‘intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time’ ” (citation omitted)).
Here, having failed to establish that MHPG was a “sham” corporation, GE has presented no evidence that any of the defendants ever personally possessed the leased equipment or ever acted in a personal capacity to cause damage to that equipment. Furthermore, GE has presented no evidence that any of the defendants ever facilitated a third party in unlawfully possessing the lease equipment. Therefore, summary judgment must be granted for the defendants on these claims.

III. Account Stated

GE next argues that Image adopted the lease under an account stated theory. “An ‘account stated’ is an acknowledgment of the existing condition of liability between the parties.” Bucklin v. Nat’l Shawmut Bank, 355 Mass. 338, 341 (1969), quoting Chase v. Trafford, 116 Mass. 529, 532 (1875). “An account stated ‘cannot be made the instrument to create a liability where none before existed, but only determines the amount of a debt where liability exists.’ ” Id., quoting Chase v. Chase, 191 Mass. 556, 562 (1906). Here, account stated is an inappropriate theory: Image was never bound by contract or debt to GE. Therefore, payment to GE under the lease did not create a binding obligation. The Court will further note that the lease could not be reassigned without satisfying conditions which were not met here. Therefore, this Court must grant summary judgment in favor of Image on this claim.

IX. Unfair and Deceptive Business Practices in Violation of G.L.c. 93A

Finally, GE argues that the defendants engaged in unfair and deceptive practices in violation of G.L.c. 93A. *400 “There is no clear definition of what conduct constitutes an ‘unfair or deceptive’ act.” Ahern v. Scholz, 85 F.3d 774, 798 (1st Cir. 1996). Therefore, whether conduct falls within the scope of G.L.c. 93A depends on the facts and circumstances of each case. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998). In practice, Massachusetts courts have found conduct to be unfair if it meets one of three tests: it falls “within any-recognized conception of unfairness,” it is “immoral, unethical, oppressive or unscrupulous,” or it would cause “substantial injury to consumers, competitors, or other businessmen.” PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). Here, there is no evidence that the defendants engaged in unfair or deceptive business practices: there is no evidence that the defendants attempted to manipulate the situation for their benefit at a expense. Rather, the facts demonstrate simply but conclusively that a business corporation failed and thereby defaulted on a lease. Therefore this Court must grant summary judgment in favor of the defendants on the G.L.c. 93A count.

IV. London and Miller’s Counterclaims

Defendants London and Miller bring counterclaims, alleging that GE’s action against them constitutes an abuse of process and unfair and deceptive business practices in violation of G.L.c. 93A. The elements of abuse of process which the plaintiffs must establish are: (1) that process was used (2) for an ulterior or illegitimate purpose, and (3) damages resulted. Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986); Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975). ‘To prevail on an abuse of process claim it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.” Datacomm Interface, Inc., 396 Mass. at 775 (citations and quotation marks omitted); Beecy v. Pucciarelli, 387 Mass. 589, 595 (1982); Quaranto v. Silverman, 345 Mass. 423, 426 (1963). As discussed above, Massachusetts courts have found conduct to be unfair if it meets one of three tests: it falls “within any recognized conception of unfairness,” it is “immoral, unethical, oppressive or unscrupulous,” or it would cause “substantial injury to consumers, competitors, or other businessmen.” PMP Assocs., Inc., 366 Mass. at 596.
When GE commenced this suit, it was under the mistaken belief that London and Miller had personally guaranteed the lease. At that stage, having been in possession of the executed lease itself, this Court believes that GE may have already violated G.L.c. 93A and thus committed an abuse of process by suing London and Miller in the first instance, but it may also be the case that GE proceeded against London and Miller through reasonable oversight. The Court need not reach that issue.
As the case progressed, however, GE learned there was no personal guaranty from either London or Miller, and that both had left MHPG almost two years prior to the default under the lease. Furthermore, there is no evidence that either London or Miller was ever aware that MHPG was not in sound financial shape at the time of their departure.
Even after having been alerted to the absence of any personal guarantees, GE proceeded with its Second Amended Complaint and vigorously prosecuted the case against defendants London and Miller. This Court finds this continued litigation inexcusable, and well parameterized within a pattern of behavior which was “immoral, unethical, oppressive, [and] unscrupulous.” The pursuit of satisfaction under the lease may not be legitimately furthered through oppressive legal action against clearly legally disinterested parties. Therefore, this Court grants summary judgment in favor of defendants London and Miller’s counterclaims, as to liability.

ORDER

Based on the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for summary judgment is DENIED. The defendants’ motions for summary judgment on the plaintiffs claims are ALLOWED. Furthermore, London and Miller’s motions for summary judgment on their counterclaims are ALLOWED, as to liability.

GE does not presently move for summary judgment on Counts I and II (breach of contract and breach of corporate guaranty), nor does GE move for summary judgment as against defendants MHPG, Inc., MHPG NY, Inc., or Paul J. DeCristofaro.

Kupfer alleges that when she departed from MHPG, she received a 2000Acura, office furniture, and equipment in lieu of a cash settlement for her shares. She further alleges that the equipment she received was not from the GE lease.

The Court notes that DeCristofaro, in his official capacity, was one of two MHPG signatories on the lease.

Two causes of action allege that Pidcock and Kupfer were alter egos of Image and that Pidcock is an alter ego of Chillybear. For the reasons discussed below, the Court will not discuss those claims in this analysis.

GE also points to Kupfer’s use of personal funds to pay lease payments on behalf of Image. Those payments are not relevant, however, to whether Kupfer intermingled her funds with those of MHPG.

DeCristofaro’s testimony does not raise an inference that either Hurowitz or Kupfer acted with malfeasance - at the time of Kupfer’s departure, MHPG was still functional and still making payments under the lease.

The parties dispute the extent to which there was an overlap between employees, with the defendants putting particular stress on their claim that much of what overlap does exist did not occur until after the filing of the present action.

As Chillybear and Image are not liable to GE as successor corporations, Counts 8 and 9, alleging alter ego liability in Pidcock and Kupfer, are inapplicable to the present action and therefore this Court must grant summary judgment in favor of the defendants.